68485. SMITH v. PHILLIPS.
(323 SE2d 669)

BENHAM, Judge.

Plaintiff/appellee Phillips was injured when he was struck by an automobile being driven in Georgia by defendant/appellant Smith, a non-resident motorist. Phillips subsequently filed suit against Smith and requested that Smith be served pursuant to OCGA § 40-12-2. Service was made upon the Secretary of State, who forwarded a copy

of the complaint and summons by certified mail to Smith at a Florida address. The letter was returned to the Secretary of State with the notation "undeliverable as addressed, no forwarding order on file." The trial court then ordered service by publication of the summons, and copies of the pleadings were served upon appellee's uninsured motorist carrier (OCGA § 33-7-11 (e)), which subsequently filed defensive pleadings in Smith's name. OCGA § 33-7-11 (d). After the uninsured motorist carrier, on behalf of Smith, requested a stay of the proceedings under the Soldiers' & Sailors' Civil Relief Act of 1940 (50 USCA App. § 501 et seq.) and had its motion denied, the case proceeded to trial. The jury rendered a verdict in favor of appellee and the court entered a judgment against appellee's uninsured motorist carrier (hereinafter "UMC"). It is from that judgment that this appeal is brought.

1. In one of his several enumerated errors, appellant takes issue with the entry of judgment against appellee's UMC.

Appellant contends that the UMC was not a named party to the action and notes that no judgment was entered against the tortfeasor prior to the entry of judgment against the UMC. Appellee maintains that the UMC was the real party in interest and became a defendant in fact, subject to having judgment entered against it, when the trial court was unable to obtain in personam jurisdiction over the tortfeasor. Appellee also labels the failure to obtain a judgment against the tortfeasor as the omission of "a meaningless step which is not required by the law and would add needless involvement in the case." However, "[t]his court has interpreted the Uninsured Motorist Act to require, as a condition precedent to a suit against the insurance carrier, that the insured first sue and recover a judgment against the uninsured motorist, whether known or unknown. Although the statute does not, by its express terms, require such a condition precedent, since the insurer is liable for the amount which the insured 'shall be legally entitled to recover' from the uninsured motorist (OCGA § 33-7-11 (a)), that liability for damages 'should be ascertained in an appropriate forum before the bringing of a suit against the insurance company under such coverage.' [Cits.]" *Allstate Ins. Co. v. McCall,* 166 Ga. App. 833 (305 SE2d 413) (1983), affd. 251 Ga. 869 (310 SE2d 513) (1984). Inasmuch as the statutory/judicial scheme which has evolved requires a determination of the uninsured motorist's tort liability before a UMC can be held accountable on its contractual obligation to its insured, we cannot agree with appellee that the entry of judgment against the tortfeasor/uninsured motorist is a meaningless step. The condition precedent to a lawsuit against the UMC being unfulfilled, it was error to enter judgment against the UMC. See *Railey v. State Farm &c. Ins. Co.,* 129 Ga. App. 875 (5) (201 SE2d 628) (1973).

Resolution of the question whether the UMC was a party against whom judgment could be entered requires a discussion of the role of the UMC in ligitation brought under the Uninsured Motorist Act (OCGA § 33-7-11). Subsection (e) of the statute provides that service may be made on a non-resident operator or owner by the publication of summons. Furthermore, "[a] copy of any action filed and all pleadings thereto shall be served as prescribed by law upon the insurance company issuing the [uninsured motorist] policy as though the insurance company issuing the policy were actually named as a party defendant. Subsection (d) of this Code section shall govern the rights of the insurance company . . ." Subsection (d) provides for service of a copy of the action and the pleadings upon the UMC as though the UMC were actually named as a party defendant in cases where the owner or operator of the injury-causing vehicle is known, as well as in cases where the owner or operator is unknown and an action against "John Doe" has been instituted. Once so served, the insurance company has the right "to file pleadings and take other action allowable by law" in its own name or in the name of John Doe or the known operator or owner. Thus, the statute gives the UMC "the right at its election to participate indirectly in the proceedings, without becoming a named party, by filing pleadings or taking other action allowable by law, in the name of the owner or operator, or both. Such insurer may also participate directly in its own name in the proceedings by filing pleadings or taking other action allowable by law, in which event it assumes the status of a named party. [Cits.]" *Home Indem. Co. v. Thomas*, 122 Ga. App. 641 (178 SE2d 297) (1970).

In the case at bar, the UMC, after being served with a copy of the action and pleadings when service on appellant by publication of summons was authorized, chose to take action in the proceedings in the name of appellant, the alleged operator of the injury-causing vehicle, thereby choosing to participate indirectly in the litigation without becoming a named party. In effect, the UMC elected "to plead only in the name of the alleged tortfeasor, thereby obtaining an adjudication of tort liability without the potentially prejudicial injection into the case of the presence of insurance coverage." *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165, 170 (268 SE2d 676) (1980). By filing an answer and other pleadings in the name of the tortfeasor rather than in its own name, appellant avoided becoming a named party to the proceedings. *Rosenbaum v. Dunn*, 136 Ga. App. 870 (1) (222 SE2d 596) (1975). Compare *Home Indem. Co. v. Thomas*, supra; *Moss v. Cincinnati Ins. Co.*, supra. Therefore, no judgment could be entered against the UMC since it was not a named party to the proceedings.

Citing *Norman v. Daniels*, 142 Ga. App. 456 (236 SE2d 121) (1977), appellee maintains that judgment could be entered against the UMC in this case because the insurer became the "defendant in fact"

when personal jurisdiction over, and therefore a valid judgment against, the tortfeasor could not be had. *Norman* involved the dismissal of a lawsuit against a non-resident uninsured motorist on the motion of the UMC on the ground that the non-resident tortfeasor had not been personally served within the applicable statute of limitation. In a discussion of the ramifications of the insurer's right to due process when the known, non-resident uninsured motorist has not been personally served, this court likened the situation to one involving a "John Doe" tortfeasor who, by the very nature of the action, cannot be personally served. The court then stated that, in such a situation, "the insurer becomes the defendant in fact." Id., p. 458. However, this is not to say that the insurer becomes a defendant in a *legal* sense, subject to the entry of judgment for or against it. In actuality, a representative of the insurer will be the person physically conducting the defenses to the plaintiff's allegations of the missing tortfeasor's tort liability. The legal liability of the UMC in defending such a suit, however, depends upon the role in the litigation that the UMC has chosen, under OCGA § 33-7-11 (d), to play: whether the UMC is acting on its own behalf and therefore subject to judgment against it or whether it is participating indirectly in the proceedings by filing pleadings on behalf of "John Doe" or the missing tortfeasor. See *Moss v. Cincinnati Ins. Co.*, supra, p. 170. The purpose of the action, then, is to give the insured/plaintiff the opportunity to establish " 'all sums which he shall be legally entitled to recover as damages' " due to the tortious conduct of the uninsured motorist. *Norman v. Daniels*, supra, p. 461. Upon successful completion of this task, the plaintiff then must present the judgment to his UMC. At that point, if the UMC has only indirectly participated in the tort liability suit, the issue of the UMC's contractual liability to the plaintiff becomes the issue. If, on the other hand, the UMC chose to directly participate in the tort suit by filing pleadings in its own name, it may receive an adjudication of its contractual liability without resorting to an action for declaratory judgment. See *Moss v. Cincinnati Ins. Co.*, supra, p. 170; *Flamm v. Doe*, 167 Ga. App. 587 (307 SE2d 105) (1983); *Ins. Co. of North America v. Dorris*, 161 Ga. App. 46 (288 SE2d 856) (1982); *Houston v. Doe*, 136 Ga. App. 583 (222 SE2d 131) (1975).

In the case at bar, the trial court was unable to exercise in personam jurisdiction over the non-resident tortfeasor, and the service by publication of summons was "insufficient to grant jurisdiction in Georgia for due process reasons." *Norman v. Daniels*, supra, p. 459; *Railey v. State Farm &c. Ins. Co.*, supra, Division 1 (d) and (h). However, "[u]nder [OCGA § 33-7-11 (e)], a motorist or vehicle owner against whom a claim is pending, but who cannot be located, is treated as an uninsured motorist, since 'whereabouts unknown' is now equal to 'identity unknown' [cit.] and 'identity unknown' is equal to

'uninsured motorist' under [OCGA § 33-7-11 (d)]." *Wentworth v. Fireman's Fund &c. Ins. Cos.*, 147 Ga. App. 854 (1) (250 SE2d 543) (1978). In effect, the tortfeasor became an uninsured motorist whose identity was unknown. The proceeding "should have been allowed to proceed as though it were a John Doe action and the insured can establish 'all sums which he shall be legally entitled to recover as damages,' caused by the uninsured motorist." *Wilkinson v. Vigilant Ins. Co.*, 236 Ga. 456 (2) (224 SE2d 167) (1976); *Norman,* supra. See also *Doe v. Moss,* 120 Ga. App. 762 (172 SE2d 321) (1969). We conclude that the trial court's inability to obtain personal jurisdiction over the tortfeasor does not authorize the entry of a judgment on a verdict of tort liability against a UMC which has chosen to participate indirectly in the proceedings.

2. In a related enumeration of error, appellant takes issue with the trial court's denial of appellant's motions for mistrial which were based upon the alleged injection of the issue of insurance into the proceedings.

In both his opening statement and closing argument, counsel for appellee informed the jury that any recovery awarded would be had against appellee's uninsured motorist policy and not appellant, the individual defendant. The trial court also permitted appellee to enter into evidence the court's order declaring appellant to be an uninsured motorist. At each of the above-mentioned instances, appellant sought a mistrial on the ground that the issue of insurance coverage had been improperly injected into the trial. Each time, appellant's motion was denied. The trial court's denial of appellant's various motions was based on its belief that no party to the action would be prejudiced by the mention of insurance coverage since the insurance company was not a party to the action, and the named defendant tortfeasor was not subject to the in personam jurisdiction of the court. While the trial court was correct in its assessment that neither the tortfeasor nor the UMC was a party to the lawsuit (see Division 1), it was error to permit appellee to mention that his uninsured motorist carrier was the entity responsible for any verdict the jury might render. In the first place, the UMC had elected, as it was entitled to do under the auspices of OCGA § 33-7-11 (d), "to plead only in the name of the alleged tortfeasor, thereby obtaining an adjudication of tort liability *without the potentially prejudicial injection into the case of the presence of insurance coverage.*" (Emphasis supplied.) *Moss v. Cincinnati Ins. Co.,* supra, p. 170. When, however, a UMC elects to contest its liability to its insured under the insurance contract executed by them, the existence of insurance coverage is the issue to be decided and injection into the case of the potential presence of insurance coverage is warranted. The statutory scheme of OCGA § 33-7-11 (d) allows the UMC to decide whether it will consolidate into one lawsuit

the issues of tort liability and contractual liability or whether it will contest each one individually. When the UMC files pleadings in the name of the tortfeasor, only tort liability is at issue; when it files pleadings in its own name, the questions of tort liability as well as coverage are in issue. *Tenn. Farmers &c. Ins. Co. v. Wheeler*, 170 Ga. App. 380 (2) (317 SE2d 269) (1984); *Moss v. Cincinnati Ins. Co.*, supra; *Employers &c. Assur. Corp. v. Berryman*, 123 Ga. App. 71 (1) (179 SE2d 646) (1970).

Appellee contends that this court's decisions in *Jiles v. Smith*, 118 Ga. App. 569 (164 SE2d 730) (1968); *Stone v. Cranfield*, 122 Ga. App. 178 (176 SE2d 498) (1970); and *Rutledge v. Glass*, 125 Ga. App. 549 (188 SE2d 261) (1972), "all stand for the proposition that it is permissible to make the jury aware of the fact that relief is sought against an uninsured motorist carrier in circumstances such as those presented here." However, none of the cases cited by appellee involves a situation similar to the one presently before us. In fact, each of appellee's cited cases concerns an insurance company which elected to file pleadings in the lawsuit in its own name, thereby electing to participate directly in the proceedings as a named party. See *Moss v. Cincinnati Ins. Co.*, supra; *Home Indem. Co. v. Thomas*, supra. Under those circumstances, the injection of the issue of insurance coverage was authorized, and a motion for mistrial justifiably overruled. In the case at bar, however, the insurance carrier had elected to participate indirectly by filing pleadings in the name of the tortfeasor. The issue of insurance coverage having been improperly injected into the trial and a mistrial sought by opposing counsel, the trial court should have granted the motion or rebuked or reprimanded offending counsel in a manner reasonably sufficient to remove the harmful effect had upon the jury. *Ga. Mut. Ins. Co. v. Willis*, 140 Ga. App. 225 (5) (230 SE2d 363) (1976). The trial court having failed to remedy the harm in either suggested way, the judgment entered on the tainted jury verdict rendered must be reversed.

Appellee argues that any such error is harmless in light of the Supreme Court's recent decision in *McCall v. Allstate Ins. Co.*, 251 Ga. 869 (310 SE2d 513) (1984). In that opinion, the Supreme Court held that an insured who sought to have assessed against his UMC the bad faith refusal to pay penalty authorized by OCGA § 33-7-11 (j) must seek and recover the penalty in the insured's lawsuit against the uninsured motorist. The introduction of the issue of bad faith refusal to pay would, of necessity, inject the issue of insurance coverage into the tort suit, effectively negating the UMC's ability to keep the issue from jury scrutiny by participating indirectly in the tort suit. Since the decision in *McCall*, however, the General Assembly has amended OCGA § 33-7-11 (j) by inserting the following: "The question of bad faith, the amount of the penalty, if any, and the reasonable attorney's

fees, if any, *shall be determined in a separate action filed by the insured against the insurer after a judgment has been rendered against the uninsured motorist in the original tort action.*" (Emphasis supplied.) Ga. L. 1984, p. 839. This amendment, effective March 28, 1984, abrogates the *McCall* holding upon which appellee relies and reinforces the concepts that a judgment against a tortfeasor is a condition precedent to the entry of a judgment against the UMC, and that the inclusion or exclusion in the tort liability suit of the issue of insurance coverage is the option of the insurance carrier.

3. As has been previously stated, the UMC in the case at bar elected to participate indirectly in the tort suit filed against the tortfeasor and, accordingly, filed several pleadings in the name of the tortfeasor. Asserting that the tortfeasor was on active duty with the United States Navy, the UMC requested a stay of the proceedings under the Soldiers' and Sailors' Civil Relief Act of 1940 (50 USCA App. § 501 et seq.), which provides for "the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in [military] service . . ." 50 USCA App. § 510. The Act states that "[a]t any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter . . . shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act . . ., unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." 50 USCA App. § 521.

However, the Act "provides for stay of proceedings to which persons in military service are *parties* . . ." (emphasis supplied) (*Moulder v. Steele*, 118 Ga. App. 87 (2) (162 SE2d 785) (1968)), and the tortfeasor/sailor was never personally served with process. Since he never became a party to the proceeding, the trial court correctly denied the request for relief under the Act.

4. In his final enumerations of error, appellant takes issue with the content of the trial court's charge to the jury. Specifically, appellant questions the exclusion of his requested instruction which embodied OCGA § 40-6-91 (b), and the inclusion of a charge which stated that "the character of a motor vehicle and its capacity for doing injury imposes on the operator a greater amount of care than is required of pedestrians."

OCGA § 40-6-91 (b) states that "[n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impractical for the driver to yield." Evidence presented at trial revealed that appellee was driving a van which was hit in the rear by a tractor-trailer truck, causing the van to roll over several times. After the van came to rest in the mid-

dle of the two-lane road, appellee crawled through a window onto the highway. When he looked back in the direction from which he had been motoring, he saw headlights 50 to 100 feet away coming toward him on the wrong side of the centerline. Appellee ran in the direction of the road's shoulder, but was hit by the car, which later was found to have been driven by appellant, before he was able to reach the side of the road. Since there was no evidence that appellee had suddenly left a place of safety and proceeded into the path of appellant's car, the charge was not authorized and the trial court did not err in refusing to so instruct the jury.

However, the objection voiced by appellant with regard to the instruction on a driver's greater duty when a pedestrian is involved has some merit. "The legal requisite of the motorist as to parties on the street or highway, whether in other vehicles or as pedestrians, and whether child or adult, is the exercise of *ordinary* care . . . [Cit.]" *Reed v. Dixon*, 153 Ga. App. 604 (1) (266 SE2d 286) (1980). The *Reed* court, noting that it was concerned with the correctness of the trial court's refusal to give a requested charge, distinguished the holding in *Kennedy v. Banks*, 119 Ga. App. 831 (1) (169 SE2d 180) (1969), in which, as here, an allegedly erroneous charge was given. There, as here, the trial court instructed the jury in other portions of the charge that the driver had to exercise due care and that whether he had done so was a question for the jury. Viewing the charge as a whole, we cannot say that the portion excerpted for analysis by appellant constituted reversible error. See *Kennedy v. Banks*, supra.

*Judgment reversed. Banke, P. J., and Pope, J., concur.*

DECIDED OCTOBER 29, 1984.

*Wayne C. Wilson*, for appellant.
*Stewart R. Brown*, for appellee.