## 73773. YARBROUGH v. DICKINSON et al.
(359 SE2d 235)

Beasley, Judge.

On April 26, 1985 Yarbrough filed suit against Dickinson for injuries she allegedly received in a collision on November 22, 1983, between her vehicle and Dickinson's. She caused service to be made on her uninsured motorist carrier, Federated Guaranty Insurance Company, pursuant to OCGA § 33-7-11 (d). Federated answered in its own name. See Moss v. Cincinnati Ins. Co., 154 Ga. App. 165 (268 SE2d 676) (1980).

One of Federated's defenses, and the ground for its motion for summary judgment, was that Dickinson was not an uninsured motorist at the time of the collision or at any time up to and including the filing of the motion, as that term is defined by OCGA § 33-7-11 (b). The result, claimed Federated, was the establishment of its non-liability under the terms of the policy and the statute even if judgment were obtained against the alleged tortfeasor Dickinson.

The trial court granted the summary judgment but provided it was not to affect any future claim by Yarbrough for PIP benefits or other coverage under that policy. Federated's insured, the plaintiff, appeals on the ground that summary judgment was not warranted because future events could materialize in an uninsured motorist claim growing out of the collision. She argues that dismissing her UMC from this suit deprives her of uninsured motorist coverage for this collision, because a later suit against the UMC or a later reintroduction of the UMC to this suit would be frustrated by the bar of the statute of limitation, citing Vaughn v. Collum, 136 Ga. App. 677 (222 SE2d 37) (1975), aff'd 236 Ga. 582 (224 SE2d 416) (1976).

At the time of the collision Yarbrough was insured by Federated with limits of $10,000 bodily injury liability per person, $20,000 per accident, and $10,000 property damage liability. Defendant Dickinson's auto policy with Aetna Casualty and Surety Company provided $300,000 per accident. Aetna was given notice of the suit, entered a defense on behalf of Dickinson without a reservation of rights, and did not deny coverage to its insured for Yarbrough's claim. The undisputed facts establish that none of the "uninsured motor vehicle"

situations, as listed in OCGA § 33-7-11 (b) (1) (D), existed at the time of the collision or thereafter.

The fear that *Vaughn* would cut off a claim against Federated in the event Aetna becomes insolvent or denies coverage for some reason is ill-founded. In *Vaughn,* defendants' motor vehicle was uninsured at the time of the collision. Thus, there existed a contractual cause of action against the UMC at that time, contingent on judgment being obtained against the tortfeasor, and the UMC was entitled by statute to be served within the limitations period for the underlying tort suit. Not having been so served, it was entitled to assert this deficiency even though it did not choose to become a party to the suit, because the purpose of the statutory requirement is to allow the potentially liable UMC to protect its "strong financial interest in the [tort] litigation." In this context "potentially" means, first of all, in all cases contingent on judgment against the tortfeasor. See *Smith v. Phillips*, 172 Ga. App. 459, 460 (1) (323 SE2d 669) (1984). Secondly, "potentially" means in some cases occasioned by the tortfeasor's vehicle at some time after the collision becoming an "uninsured motor vehicle" because of the happening of one of the events described in OCGA § 33-7-11 (b) (1) (D).

Here, the insured fulfilled her obligation to timely serve her UMC when there was a question as to whether defendant's vehicle was "uninsured" under OCGA § 33-7-11 (b) (1) (D). The UMC had the option to defend in its own name, which it did, showing that it cannot be held liable under the facts as they exist. Should Aetna later deny coverage or become insolvent, a cause of action may then arise, because only at that time would there be an "uninsured" motor vehicle. *Rabun v. Williams* 168 Ga. App. 467, 470 (3) (309 SE2d 624) (1983). As the Supreme Court reiterated in *Bryant v. Allstate Ins. Co.*, 254 Ga. 328, 330 (326 SE2d 753) (1985): " '[t]he statute of limitation begins to run on any given claim on the date the claim accrues — in other words, on the date that suit on the claim can first be brought. "When the question is raised as to whether an action is barred by a statute of limitation, the true test to determine when the cause of action accrued is 'to ascertain the time when the plaintiff could first have maintained his action to a successful result.' " [Cit.]' [Cit.]" In such a suit, Federated would have no defense that it was not notified pursuant to OCGA § 33-7-11 (d), because it clearly was.

Failure to fulfill the statutory requirement of notice to the UMC of the tort suit simply creates a bar to an action on the insurance contract; it is not a substitute for the statute of limitation on a contract suit, nor does it compel a grafting of a potential contract claim in the tort action.

Notice is required so that the UMC can assert its interest and protect itself from later liability by active participation in the tort

suit. In other words, since its liability is contingent on a judgment against its insured's tortfeasor, it has an interest in assuring a minimal or zero judgment. It would be too late to protect itself in that tort suit if, sometime after the collision, one of the events occurred which rendered the tortfeasor's vehicle "uninsured."

Since, under the facts, Dickinson's vehicle is not an "uninsured" one, Yarbrough has no present cause of action against her UMC and it cannot be compelled to remain in the tort suit.

*Judgment affirmed. McMurray, P. J., concurs. Sognier, J., concurs in the judgment only.*

DECIDED JULY 1, 1987.

*Jack T. Elrod, Don M. Jones*, for appellant.
*Richard T. Gieryn, Jr., W. Wray Eckl, Stephen R. Kane*, for appellees.