## A97A0455. STOUT v. CINCINNATI INSURANCE COMPANY.
(486 SE2d 195)

Blackburn, Judge.

Elva Carolyn Stout appeals from the trial court's dismissal of her uninsured motorist carrier, Cincinnati Insurance Company (Cincinnati), from her personal injury renewal action. For the reasons set forth below, we affirm the trial court's decision.

On August 10, 1992, Stout was injured in an automobile collision with a truck. On August 9, 1994, she filed suit against Albert Wolfe, the driver of the truck; Darica Trucking Company (Darica), Wolfe's employer; and Heart of America Fire & Casualty Insurance Company (Heart), Darica's insurer. Cincinnati, Stout's uninsured motorist carrier, was not served with a copy of the summons and complaint in this action. See OCGA § 33-7-11 (d).

In January 1994, Heart's risks and obligations under its policy with Darica were transferred to Commonwealth General Insurance Company (Commonwealth). However, Commonwealth subsequently became insolvent in September 1995. Stout then voluntarily dismissed her suit seven months later, without ever having attempted to serve Cincinnati with a copy of the summons and complaint. Three days later she filed a renewal action pursuant to OCGA § 9-2-61, and had Cincinnati served with a copy of this summons and complaint. Cincinnati answered the complaint, asserted the affirmative defense of the statute of limitation, and successfully moved for dismissal.

In order for a party to recover from her uninsured motorist carrier, OCGA § 33-7-11 (d) provides that the carrier must be served with "a copy of the action and all pleadings thereto . . . as prescribed by law," as if it were named a defendant in the action. Service must be accomplished "within the time allowed for valid service on the defendant in the tort action." *Bohannon v. J. C. Penney Cas. Ins. Co.*, 259 Ga. 162, 163 (377 SE2d 853) (1989). In this case, the statute of limitation for the only claim Stout asserted — personal injury — was two years, and Stout neither served nor attempted to serve Cincinnati within that two-year period as required by *Bohannon*, which we are constrained to follow. Her action against Cincinnati therefore cannot be maintained.

OCGA § 33-7-11 (d), as interpreted by our Supreme Court in

*Bohannon*, makes available to the uninsured motorist carrier the statute of limitation defense available to the defendant. *Bohannon* recognized the fact that OCGA § 33-7-11 (d) fails to deal with the circumstance of an uninsured motorist carrier becoming insolvent subsequent to the date of the tort, but elected not to address same. It is possible for the statute of limitation to run before the date that the tortfeasor becomes an uninsured motorist.

The injustice of the effect of the *Bohannon* rule was recognized by Judge Johnson in *Reid v. U. S. Fidelity &c. Co.*, 223 Ga. App. 204, 207 (1) (477 SE2d 369) (1996) when in a similar case, he stated that "[f]act situations such as this cry out for legislative action, and, should such pleas produce no result, rethinking by the Supreme Court of the policy reflected in the cases regarding the applicability of the two-year statute of limitation." The effect of *Bohannon* is to require every plaintiff, including those who never make an uninsured motorist claim, to serve their uninsured motorist carrier for their protection, even when the plaintiff cannot show that defendant meets the statutory definition of an uninsured motorist under OCGA § 33-7-11. If the plaintiff served the uninsured motorist carrier where the tortfeasor is not an uninsured motorist, the carrier would be entitled to summary judgment. OCGA § 9-11-56; *Rabun v. Williams*, 168 Ga. App. 467, 470 (3) (309 SE2d 624) (1983). The additional service cost to all of the plaintiffs who never seek uninsured motorist coverage and the expense to the uninsured motorist carriers who have to respond to all such cases is totally wasted and must of necessity result in higher insurance premiums for all Georgia drivers.

Where the carrier does not become insolvent or the defendant does not otherwise become uninsured until *after the statute of limitation has run*, the plaintiff is then barred from claiming benefits under plaintiff's uninsured motorist policy because the statute of limitation had run prior to plaintiff being entitled to make a claim. *Vaughn v. Collum*, 236 Ga. 582 (224 SE2d 416) (1976). Uninsured motorist coverage is designed to provide payment for all sums which the insured is legally entitled to recover as damages from the uninsured motorist. OCGA § 33-7-11; see *State Farm Mut. Auto. Ins. Co. v. Murphy*, 226 Ga. 710, 713 (177 SE2d 257) (1970). The holdings in *Vaughn* and *Bohannon* are inconsistent with the very purpose of uninsured motorist coverage, for which the plaintiff has paid a premium. Plaintiffs are therefore deprived of the benefit of their insurance contract without fault on their part.

The Supreme Court stated in *Bohannon* that "[i]t would be possible to formulate an exception for cases where . . . it is later determined that [liability] coverage does not apply. Such a rule might allow a plaintiff to serve process within a reasonable time after it is legally determined that the negligent motorist is uninsured. *But,*

*fashioning such a rule is a task that is better left to the legislature."* (Emphasis supplied.) Id. at 163. To date, the legislature has not acted, and certain plaintiffs and all who pay auto insurance premiums continue to suffer. For the benefit of all, I renew Judge Johnson's call in *Reid* for the legislature or the Supreme Court to act to address the problems resulting from the existing uninsured motorist law and the cases interpreting same.

Stout contends that her service of Cincinnati in the renewal action brings Cincinnati into the case. This argument is without merit for two reasons. OCGA § 33-7-11 and the holding in *Bohannon* require that the uninsured motorist carrier be served within two years under the facts of this case. Inasmuch as Cincinnati was not served in the original action and has never been served within the statute of limitation, the renewal statute may not be used to add Cincinnati to the case, approximately one and one-half years after the statute of limitation has expired. OCGA § 9-2-61; see *Acree v. Knab*, 180 Ga. App. 174, 175 (348 SE2d 716) (1986); see also *Ludi v. Van Metre*, 221 Ga. App. 479, 481 (3) (471 SE2d 913) (1996) (valid first action with proper service on defendant a prerequisite to a renewal action).

The cases Stout cites in support of her position do not demand a different result. *Ga. Farm Bureau Mut. Ins. Co. v. Kilgore*, 265 Ga. 836 (462 SE2d 713) (1995), does not deal with the renewal statute which is at issue in this case. She also relies upon *Reid*, supra, but *Reid* is distinguishable. In that case, the plaintiff actually served her uninsured motorist carrier in her first action prior to dismissing it and refiling it as a renewal action. Unlike the present case, the original action in *Reid* was therefore merely voidable at the time of its dismissal. *Reid* therefore does not control the outcome of this case, and the trial court properly granted Cincinnati's motion to dismiss. I also fully concur with the special concurrence.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur fully and specially.*

JOHNSON, Judge, concurring specially.

Because of the decisions of the Supreme Court in *Vaughn v. Collum*, 236 Ga. 582 (224 SE2d 416) (1976) and *Bohannon v. J. C. Penney Cas. Ins. Co.*, 259 Ga. 162 (377 SE2d 853) (1989), cited by the majority, I agree that we are constrained to affirm the trial court's dismissal of Cincinnati in this case. I fully agree with Judge Blackburn's lament regarding the unfairness of this situation, and ˙ have expressed almost identical sentiments in *Reid v. U. S. Fidelity &c. Co.*, 223 Ga. App. 204 (477 SE2d 369) (1996), also cited but distinguished by the majority. I fully concur in the majority opinion, which calls for a re-examination of the *Bohannon* rule. I write separately to

repeat my plea in *Reid*. I implore the Supreme Court and/or the legis-
lature to re-examine the *Bohannon* rule.

The statutory scheme for uninsured motorist coverage reflects a
public policy designed to assure that the uninsured motorist carrier
enjoys the same rights and defenses, as to the tort claims, as the
uninsured motorist. One cannot seriously quarrel with the wisdom of
such a public policy. In my view, however, the *Bohannon* decision
actually places the uninsured motorist carrier in a superior position
to the uninsured motorists/defendants in situations such as
presented by the facts of this case, where a defendant was insured at
the time the action was commenced but became uninsured during
the pendency of the action but after the two-year statute of limitation
had expired. The uninsured motorist/defendant is still in the case
and exposed, while the carrier has been released from the very expo-
sure it contracted to assume. In effect, therefore *Bohannon* has
deprived the insured of the benefits of the contract of insurance and
given the carrier a windfall.

As Justice Weltner stated in his dissent in *Bohannon*, "[t]he rule
should be that a policyholder must perfect service upon the unin-
sured motorist carrier as soon as reasonably possible *after* becoming
aware, by whatever means, that there is a substantive doubt as to
the existence of adequate insurance coverage of an event that might
become the subject of an uninsured motorist claim." Id. at 163 (3).
His explanation in subsequent paragraphs of the dissent eloquently
demonstrates that such a rule is both workable and would satisfy the
public policy concerns addressed by the statute and decisions seeking
to assure that the carrier has the same standing in the action as the
uninsured motorist.

The decision in *Bohannon* recognizes the problem, but states
that "fashioning such a rule" allowing service upon the insurer
within a reasonable time after it is determined that the defendant is
uninsured is "a task that is better left to the legislature." I must
agree with Justice Weltner's dissent, which disagrees with the pro-
position that the General Assembly is the only source of relief for a
policyholder who learns only after the expiration of the appropriate
period of limitation that a tortfeasor is, or may be, an uninsured
motorist. After all, it was the courts, not the legislature, who created
the problem we now confront by their interpretation of OCGA § 33-7-
11 (d) (formerly Code Ann. § 56-407.1 (d)). Furthermore, a great
period of time has elapsed since *Bohannon* suggested a legislative
solution, and the General Assembly has not seen fit to address the
issue. I believe it to be within the proper scope of judicial authority to
correct this situation and place the risk of injury by an uninsured
motorist exactly where the policyholder, by the payment of a pre-
mium, and the carrier, by the issuance of a policy of insurance, have

contracted it to be — that is, on the carrier, as Justice Weltner long ago suggested.

I am authorized to state that Presiding Judge Pope and Judge Blackburn join in this special concurrence.

DECIDED APRIL 22, 1997 —

Before Judge Mulherin.

*Jolles & Slaby, Isaac S. Jolles, Richard A. Slaby*, for appellant.
*Fulcher, Hagler, Reed, Hanks & Harper, Scott W. Kelly*, for appellee.