A97A1545. STATE FARM FIRE & CASUALTY INSURANCE
COMPANY v. TERRY.
(495 SE2d 66)

JOHNSON, Judge.

This case presents yet another permutation of the "vanishing insurance coverage" dilemma in the context of disputes between automobile insurance carriers and their insureds regarding uninsured motorist insurance.

On July 29, 1993, Kenneth Terry was injured in a motor vehicle collision involving an automobile operated by Undra Davis. The automobile driven by Davis was owned by and rented from McFrugal Auto Rental. Terry sued Davis and served his own uninsured motorist carrier, State Farm Fire & Casualty Insurance Company, within the two-year statute of limitation for personal injuries. See OCGA §§ 9-3-33; 33-7-11 (d); *Stout v. Cincinnati Ins. Co.*, 226 Ga. App. 220 (486 SE2d 195) (1997). State Farm filed an answer in its own name. It thereafter became apparent that Davis was insured up to $50,000 by McFrugal and adequately insured against any larger judgment by an excess policy. Thus, Davis was not an "uninsured motorist" so as to implicate the uninsured motorist coverage provisions of Terry's automobile insurance policy with State Farm. OCGA § 33-7-11 (d). Accordingly, State Farm requested and received Terry's consent to dismiss without prejudice State Farm as a party to Terry's lawsuit against Davis. The consent dismissal was drafted by State Farm,

signed by counsel for both State Farm and Terry, and included the following language: "In the event that the plaintiff finds it appropriate to renew an uninsured motorist claim, under circumstances including a withdrawal of coverage by a liability insurer, State Farm will be served in the manner authorized by law and have a full right to defend on liability and damages in this case. Stipulations and defaults by, or Judgments against, the individual defendant will not be binding upon or create exposure by State Farm."

State Farm did not participate further in any other aspect of the litigation between Terry and Davis. McFrugal, acting as insurer, provided Davis with counsel and defended the lawsuit. On August 29, 1995, Terry obtained a judgment for $50,000 against Davis in the underlying action, for which McFrugal was ultimately responsible as Davis' insurer. Prior to this time, Terry had not renewed his uninsured motorist claim against State Farm and, in fact, Davis was not an "uninsured motorist" up until and through the date of the judgment.

On October 3, 1995, Terry's counsel received notice from McFrugal that it had ceased operations as of September 30, 1995, and that there were no funds forthcoming to satisfy the judgment. Thus, more than 30 days after Terry had obtained a judgment against Davis, Davis' insurance coverage vanished and Davis effectively became an uninsured motorist for the first time.

On October 19, 1995, Terry sent a demand letter to State Farm insisting that it satisfy the $50,000 judgment obtained against Davis. The letter specifically stated, *"[t]his is now an uninsured motorist case."* (Emphasis in original.) Citing the dismissal, State Farm replied it had never been re-served in a manner authorized by law, had no obligation to pay the judgment, and would not pay the claim until it had been afforded the opportunity to defend on the merits in court. Terry then filed the action against State Farm which is now before us, seeking to recover the full amount of the underlying judgment against Davis, as well as the 25 percent penalty and attorney fees authorized by OCGA § 33-7-11. State Farm answered the lawsuit and moved for summary judgment, contending that, notwithstanding any judgment, the dismissal agreement preserved its right to defend on the merits. Terry subsequently also filed a motion for summary judgment.

The trial court granted Terry's motion as to recovery of the $50,000 judgment amount, but denied summary judgment as to Terry's claim for bad faith penalties and attorney fees. The court also denied summary judgment to State Farm. State Farm appeals. For reasons explained below, we reverse the trial court's ruling granting summary judgment to Terry, affirm the denial of summary judgment to State Farm, and remand the case with direction. We note that, as

Terry admits, there have been no reported cases in Georgia and no comparable cases in other states that have dealt with the particular situation before us.

1. In six enumerations of error, State Farm contends the trial court erred in ruling that Terry was not bound by the dismissal agreement in the original action, in granting Terry's motion for summary judgment and in denying State Farm's motion for summary judgment. Under OCGA § 9-11-56 (c), summary judgment should be granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review de novo a grant of summary judgment, viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *Rice v. Huff*, 221 Ga. App. 592, 593 (472 SE2d 140) (1996).

2. Our first task is to ascertain the meaning and effect of the consent order dismissing State Farm as a party in Terry's original action against Davis. In doing so, we begin by recognizing that this particular consent order constitutes a binding agreement between the parties with regard to their respective rights and obligations. Terry's arguments that State Farm requested and drafted the dismissal are irrelevant. Both parties signed the dismissal, and the dismissal became a binding contract between the parties. "Competent parties are free to choose, insert, and agree to whatever provisions they desire in a contract . . . unless prohibited by statute or public policy. [Cit.]" *Simmons v. Select Ins. Co.*, 183 Ga. App. 128, 129 (1) (358 SE2d 288) (1987). As discussed more fully below, we find the provisions in the dismissal are prohibited neither by statute nor public policy.

It is well established that contract disputes are particularly well suited for summary adjudication since construction of a contract is ordinarily a matter of law for the court. *Burns v. Reves*, 217 Ga. App. 316, 318 (1) (457 SE2d 178) (1995). "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." OCGA § 13-2-3.

We find the dismissal at issue to be clear and unambiguous. The express language of the dismissal provides that in the event Terry elected to renew an uninsured motorist claim against State Farm, he would perfect service upon State Farm "in the manner authorized by law." Terry further agreed that State Farm would "have a full right to defend [against Terry's claims] on liability and damages. . . ." Finally, and most importantly, Terry agreed that "[s]tipulations and defaults by, *or Judgments against*, [Davis] will not be binding upon or create exposure by State Farm." (Emphasis supplied.)

The only reasonable construction of this language is that State

Farm would be given an opportunity to defend on liability and damages even after a judgment had been rendered against Davis. "It is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless. [Cit.]" *Bd. of Regents &c. of Ga. v. A. B. & E., Inc.*, 182 Ga. App. 671, 675 (357 SE2d 100) (1987). Thus, Terry is bound by the terms in the contract to afford State Farm a full right to defend on liability and damages, notwithstanding the fact that a judgment against Davis has already been rendered.

3. In an attempt to avoid the contract, Terry argues that the contract cannot be enforced because its language contravenes the provisions of the Uninsured Motorist Act, OCGA § 33-7-11. We disagree.

OCGA § 33-7-11 (d) provides that a personal injury plaintiff must serve his uninsured motorist provider "as though the insurance company were actually named as a party defendant." Once served, OCGA § 33-7-11 affords the uninsured motorist provider the right to file defensive pleadings and take other necessary actions. In fact, Georgia law provides that the uninsured motorist provider can answer in its own name, become a party to the litigation, and contest issues of liability, damages and coverage. OCGA § 33-7-11 (d); *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129 (2) (430 SE2d 98) (1993). While we agree that this opportunity to contest liability and damages may be waived by the uninsured motorist provider (see *Continental Ins. Co. v. Echols*, 145 Ga. App. 112 (243 SE2d 88) (1978)), this case does not present a waiver issue.

In *Echols*, the uninsured motorist provider was served, but unilaterally elected not to participate in the case. The uninsured motorist provider then attempted to force the insured to relitigate the issues. We held that in such a case, the uninsured motorist provider waived his opportunity to contest liability and damages after a judgment was entered against the uninsured motorist. The trial court in this action read *Echols* to require an uninsured motorist carrier to always litigate the first action or be bound by its result. Such a result is not contemplated by the statute, especially in a case such as the one with which we are presented, where, at the time Terry and State Farm signed their dismissal, Davis was not an "uninsured motorist" because McFrugal was still solvent and remained so until *after* judgment was entered against Davis.

Moreover, unlike the uninsured motorist provider in *Echols*, State Farm did not merely sit back and elect not to participate. State Farm obtained a dismissal without prejudice, signed by Terry's counsel, which provided that State Farm would have a full right to defend on liability and damages if it became necessary for Terry to re-serve State Farm in a manner authorized by law. This dismissal specifically stated that a judgment against Davis would not be binding

upon or create exposure by State Farm, reserving State Farm's rights under the Uninsured Motorist Act. Relying on the contract with Terry, State Farm did not participate in any other aspect of the litigation between Terry and Davis. In addition, unlike the uninsured motorist provider in *Echols*, State Farm was legally unable to pursue its statutory right to take defensive actions in the case against Davis because it had been dismissed from the case.

Contrary to the trial court's holding, Terry is not being "penalized for the decision of [State Farm] not to pursue a defense of [its] position." Terry is merely being held accountable for a contract he entered, a contract which benefited him by (1) saving him the time and expense of litigating with State Farm at a time when it was apparent his action did not involve an uninsured motorist and (2) affording him the ability to re-serve State Farm at a later date without fear that the statute of limitation had expired. The fact that Terry may have to undergo a second trial in this case is a consequence brought about by the timing of the change of Davis' status from insured to uninsured and the agreement with State Farm. State Farm was certainly entitled to rely upon the agreement contained in the voluntary dismissal.

We further disagree with the trial court that the dismissal language "amounts to a forfeiture of the right to be protected from injury when an uninsured motorist is involved." The language of the dismissal does not prohibit Terry from recovering uninsured motorist benefits. It does not limit uninsured motorist coverage through provisions or exclusions, as do the cases cited by Terry and the trial court. Rather, the dismissal merely preserves State Farm's statutory right to defend on the merits as to liability and damages.

Based on the foregoing, we find the dismissal language does not violate the Uninsured Motorist Act but, rather, preserves State Farm's statutory right to defend the action. Contracts should be given a construction that renders them in compliance with a governing statute rather than in contravention thereof. *Langford*, 208 Ga. App. at 130 (3) (b) (physical precedent only). Even if this case did not initially fall within the ambit of OCGA § 33-7-11, due process mandates that an uninsured motorist carrier, like any other defendant, be allowed notice and an opportunity to be heard before judgment is entered against it. We find the trial court erred in refusing to enforce the dismissal language.

4. Terry also attempts to avoid the language in the dismissal by claiming that the doctrines of res judicata and collateral estoppel will bar him from pursuing his claim against State Farm. This claim lacks merit.

"Generally, res judicata bars relitigation of any matter of a cause of action that was, or could have been, put in issue and adjudicated in

a prior proceeding between the same parties, while estoppel by judgment prevents relitigation in a subsequent suit (involving a different cause of action) a matter which was actually adjudicated in a former case. [Cits.] Neither defense, however, is available unless the subsequent suit is between the same parties or their privies. [Cits.]" *Blackburn v. Blackburn*, 168 Ga. App. 66, 72 (2) (308 SE2d 193) (1983).

Procedurally, it should be remembered that an uninsured motorist claim is a contract action between the insured and his insurance carrier, even though it proceeds and is tried on tort issues. *State Farm &c. Ins. v. Bd. of Regents &c. of Ga.*, 226 Ga. 310, 311 (174 SE2d 920) (1970). Within the context of this case, the parties will be trying a contract case as though it is the underlying tort case. The predicate to the contract action is State Farm's right, preserved by the dismissal language, to litigate the issue of liability. Thus, this case is no different than if State Farm had elected to defend in its own name, with the exception that Davis is not a party to this new action.

This being the case, contrary to Terry's contentions, Davis cannot raise the defenses of res judicata or collateral estoppel because Davis is not a party to Terry's present action against State Farm. While Davis will, in all likelihood, be called as a witness in the present action, Davis is *not* a named defendant and is, therefore, not entitled to raise these defenses. Moreover, the original judgment against Davis remains enforceable as to Davis and is res judicata as to Davis, regardless of the outcome of the new action.

Likewise, while Terry could assert the defenses against Davis, he cannot use the doctrines offensively against State Farm, who was not a party to the prior case and did not have a full and fair opportunity to litigate the liability issue. We further find that Terry has waived any such defenses against State Farm due to the language of the dismissal agreement. Even Terry does not argue that he could claim the benefit of these principles.

We also find that State Farm could not raise these principles in a subsequent proceeding since State Farm's counsel affirmatively stated in open court that State Farm agreed not to raise these affirmative defenses. "Statements of counsel during the trial of a case may be regarded as admissions in judicio." (Citations and punctuation omitted.) *John H. Smith, Inc. v. Teveit*, 175 Ga. App. 565, 567 (1) (a) (333 SE2d 856) (1985); *Liberty Nat. Bank &c. Co. v. Diamond*, 231 Ga. 321, 323 (III) (201 SE2d 400) (1973). Likewise, the statement made by State Farm's counsel during the motion for summary judgment hearing may be regarded as an admission in judicio, binding on State Farm.

5. Although State Farm has not challenged the initial service of process in either the first lawsuit or the action now before us, State

Farm contends it was entitled to summary judgment because Terry has not re-served it with process in the first action. We disagree. Terry satisfied OCGA § 33-7-11 (d)'s requirement that the uninsured motorist carrier be "served as prescribed by law" when he served State Farm in the first lawsuit. He satisfied both that statute and the dismissal's requirement that State Farm "be served in the manner authorized by law" by serving the complaint and summons in the present action. The trial court, therefore, was correct in denying summary judgment to State Farm.

6. We feel compelled to note that the procedural difficulties in this case were created by the parties, although the absurdity of the law in this area may well create the same procedural situation in the future. Because of the dismissal language, the parties must try this case again as though it were never tried. Terry must amend his complaint consistent with this opinion, and the parties and the court must ignore the fact that a judgment has already been rendered against Davis. At trial, a jury could find that Davis is not liable, thus entitling State Farm to judgment. On the other hand, a jury could find that Davis is liable, in which case State Farm would be liable to the extent of the judgment up to its policy limits.

7. Given the holding in *Bohannon v. J. C. Penney Cas. Ins. Co.,* 259 Ga. 162 (377 SE2d 853) (1989), regarding the statute of limitation issue and the difficulties created by that decision in vanishing coverage situations, such as the ones Justice Weltner anticipated in his *Bohannon* dissent and the one with which we are presented with in this case, the trial courts need guidance and direction regarding how a plaintiff can preserve his claims under an uninsured motorist contract and how the uninsured motorist carrier can preserve its rights to defend on the merits enjoying the same footing as the tortfeasor, which the court in *Bohannon* sought to ensure. In *Rabun v. Williams,* 168 Ga. App. 467, 470 (3) (309 SE2d 624) (1983), this Court incorrectly held that an uninsured motorist carrier properly served was entitled to summary judgment upon a showing that the defendant tortfeasor was not an uninsured motorist at the time of the motion for summary judgment. In view of the problems associated with vanishing coverage situations, it is clear the *Rabun* holding is incorrect.

Where the possibility exists that coverage will vanish, the proper approach is to grant the uninsured motorist carrier a dismissal without prejudice to either party. This would not only allow the uninsured motorist carrier to be brought back into the case with its full rights to defend on the merits should the case become an uninsured motorist case during its pendency, but it would also preserve the plaintiff's rights under its contract with the uninsured motorist carrier. Summary judgment is inappropriate because it is premature. Thus, we

expressly disapprove and overrule *Rabun*.

Based on the foregoing, we reverse the grant of summary judgment to Terry, affirm the denial of summary judgment to State Farm, and remand this case with direction to try the case as if it were the original case consistent with this opinion.

*Judgment affirmed in part and reversed in part. McMurray, P. J., Pope, P. J., Smith, Ruffin and Eldridge, JJ., concur. Beasley, J., concurs specially. Andrews, C. J., and Birdsong, P. J., concur in Divisions 1, 2, 3 and 4 and dissent in Divisions 5, 6 and 7. Blackburn, J., concurs in part and dissents in part.*

BEASLEY, Judge, concurring specially.

I concur in the judgment but not in the entirety of the opinion, particularly with the direction given and with the criticism that the law is absurd in this area.

This is a suit on a contract of insurance covering what turned out to be an "uninsured motor vehicle" as defined in OCGA § 33-7-11 (b) (1) (D) (iv). The rights and obligations of the parties to the contract, which rights and obligations are governed in part by OCGA § 33-7-11, were altered by an agreement made and filed in the underlying tort suit brought by the insured against the alleged tortfeasor. By that agreement the insured, who ultimately obtained a $50,000 judgment against the tortfeasor, bought the potential of a second lawsuit wherein the tortfeasor's liability and the insured's damages would have to be retried. That is the instant suit. Because the dismissal by its terms relieved the UM carrier of the binding effect on it of any judgment in that tort suit, plaintiff in this contract action must not only show that he has valid UM coverage under his policy in force at the time of the collision and that the tortfeasor's vehicle is "uninsured" as defined in the statute, but he must also show the elements of the underlying tort rather than simply the existence of an unsatisfied judgment against the tortfeasor.

What happened is this. Terry, the insured, brought a tort claim against Davis for injuries arising out of a motor vehicle collision. As required by OCGA § 33-7-11 (d) in order to preserve an insured's rights to UM coverage in the event the insured becomes entitled to it, Terry served a copy of the action on his UM carrier, State Farm. At that time, none of the five circumstances listed in OCGA § 33-7-11 (b) (1) (D) existed, and the alleged tortfeasor did not fit the sixth category described in OCGA § 33-7-11 (b) (2) (unknown owner or operator).

OCGA § 33-7-11 (d) did not require the uninsured motor vehicle insurer to take any action after it was notified by service of the tort suit. Instead, because the insurer was potentially liable under its contract, the law gave it "the right to file pleadings and take other

action allowable by law [such as discovery] in the name of either the known owner or operator or both or itself." The right is given because the carrier in its contract undertakes "to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle" to the extent of the policy limits. OCGA § 33-7-11 (a) (1). Therefore, the potential liability exists until its insured recovers by satisfaction of a judgment, if one is awarded against the alleged tortfeasor.

The majority incorrectly states that State Farm "was not a party to the [tort] case and did not have a full and fair opportunity to litigate the liability issue." State Farm elected to become a party to the suit as another defendant, by filing an answer and cross-claim in its own name. *Langford v. Royal Indem. Co.*, 208 Ga. App. 128, 129 (2) (430 SE2d 98) (1993) (physical precedent as to Division 3). Shortly thereafter, however, while the alleged tortfeasor's liability was still an issue, State Farm and its insured agreed to a dismissal of State Farm from the tort suit, which dismissal was filed and by which State Farm reserved its right to a full and fair opportunity to litigate the liability issue. The dismissal read in its entirety: "DISMISSAL WITHOUT PREJUDICE AS TO STATE FARM. Plaintiff hereby dismisses, without prejudice, State Farm Mutual Automobile Insurance Company. The parties consent and agree that State Farm will waive any statute of limitations defense in the event that it becomes necessary for State Farm to be re-joined in this litigation. In the event that the plaintiff finds it appropriate to renew an uninsured motorist claim, under circumstances including a withdrawal of coverage by a liability insurer, State Farm will be served in the manner authorized by law and have a full right to defend on liability and damages in this case. Stipulations and defaults by, or Judgments against, the individual defendant will not be binding upon or create exposure by State Farm. In the event the counsel for the named defendant or insurance carrier (McFrugal) files a Declaratory Judgment Action, counsel for State Farm agrees to participate in the litigation of this case."

The insured acquired no ripe UM claim during the activity in that case prior to judgment, so the reintroduction of State Farm into the case was not attempted. But the agreement did not extinguish the insured's potential right to coverage. The dismissal was "without prejudice," and OCGA § 33-7-11 (a) (1) obligates the insurer for "all sums" within the policy limits which its insured is "legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle."

When it developed after judgment that the insured could not collect his judgment from the tortfeasor's insurer due to its post-judgment insolvency, he turned to his insurer because the motor vehicle became uninsured within the meaning of OCGA § 33-7-11 (b)

(1) (D) (iv). Although State Farm did not dispute this as fact, it did refuse to pay on the ground its insured had agreed, as a condition of dismissing State Farm from the tort suit without prejudice, that any judgment he won against Davis would not "be binding upon or create exposure by" State Farm.

Consequently, the insured's suit on the policy, which has a six-year statute of limitation under OCGA § 9-3-24, is burdened by the specific agreement to permit State Farm to challenge Davis' tort liability and the amount of damages. Had that provision been omitted from the dismissal agreement, Terry would have been entitled to recover the amount of the tort judgment from State Farm in that it admits coverage, assuming it does not contest the fact of uninsuredness.

I find no fault with the statute or with its construction by the Supreme Court in *Bohannon v. J. C. Penney Cas. Ins. Co.*, 259 Ga. 162 (377 SE2d 853) (1989), and *Vaughn v. Collum*, 236 Ga. 582 (224 SE2d 416) (1976). In order to protect his existing or potential uninsured motor vehicle claim against his UM carrier, all the insured must do is notify the carrier, by copy of the action against the alleged wrongdoing driver and/or owner of the vehicle that judgment is being sought. The reason it must be done at the outset, within the statute of limitation applicable to the tort action, is that the UM carrier is potentially liable from that moment on and is entitled to protect its interests from that point. As succinctly stated in *Vaughn*, "the uninsured motorist carrier has the same interest in investigating and defending the tort claim as does any defendant in a tort case." See also *Doe v. Moss*, 120 Ga. App. 762, 765 (172 SE2d 321) (1969) (the plaintiff's UM carrier "is a party at interest").

Were it not to be notified until after judgment, such as when a defendant's insurer becomes insolvent post-judgment, its opportunity to investigate, participate in discovery and defend against the tort judgment in the first place would be nonexistent. In the absence of the agreement of dismissal in this case, State Farm would have risked its potential liability to pay the judgment becoming actual with the obtaining of a judgment which insurance would not pay. That liability would not depend on whether it took an active part in the tort action, as it had opportunity to do, but on its insured's compliance with the requirement that he serve the UM carrier within the time he must serve the alleged tortfeasor. Whether the motor vehicle is "uninsured" at that time is immaterial; the law recognizes that it may become uninsured before the injured party recovers his damages.

The economic consequences of requiring service at the outset or, instead, only when "uninsured" becomes an existing fact is a subject for the legislature to consider if it chooses to reconsider OCGA § 33-7-

11. It is equipped to hear from all interested stakeholders and to decide what procedure best provides due process to those ultimately liable to pay for the results of motor vehicle collisions, in order to achieve the public policy of coverage for an injured innocent driver or passenger.

Justice Weltner's suggestion in the dissent in *Bohannon*, supra at 163-164, that requiring notice only *after* "there is a substantive doubt as to the existence of adequate insurance coverage . . . would protect all parties concerned" because notice would come "well in advance of any money judgment," is not even borne out in this very case. The "substantive doubt" did not arise until after the judgment. That suggestion overlooks the post-judgment potential of liability arising under any of the circumstances listed in OCGA § 33-7-11 (b) (1) (D). It ignores the stake which the UM carrier has from the very outset of the suit. It overlooks that even notice during the course of the litigation but after discovery is conducted could require discovery all over again anyway. And it ignores the difficulty of determining when "a substantive doubt as to the existence of adequate insurance coverage" arises; such a nebulous event is ill-suited for pegging timely service on.

The laudable intention of the legislature, which seeks to protect the innocent, injured UM-insured motorist from loss, is to allow the issue of coverage to be tried right in the tort suit, if the UM carrier wishes, and to require the issue of tort liability to be tried only once. The salutary effects of avoiding multiple suits is recognized in *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165, 170 (268 SE2d 676) (1980) (unanimous whole court). As to the issue of coverage, this avoids the necessity for a separate declaratory judgment action by the UM carrier to resolve that issue before it must decide whether to defend the alleged tortfeasor. *U. S. Fidelity &c. Co. v. Bishop*, 121 Ga. App. 75, 77 (172 SE2d 855) (1970).

If the UM carrier who faces a potential claim wishes to take its chances after notice (by way of service of the tort complaint) and not defend in the name of the operator or owner or itself or some combination thereof, then it will be bound by the judgment because it could have done so. Its insured in a subsequent contract action need prove only four facts: the tort judgment, timely notice of the tort suit on the UM carrier, uninsuredness of the judgment debtor's vehicle, and UM coverage; the insured need not re-prove tort liability and damages. See, e.g., *Smith v. Phillips*, 172 Ga. App. 459, 460, 462 (323 SE2d 669) (1984).

I do agree with the majority that, insofar as it would apply to the statute now in force, *Rabun v. Williams*, 168 Ga. App. 467, 470 (3) (309 SE2d 624) (1983), was in error in granting total summary judgment. I assume Aetna had made itself a party defendant in that case

and raised the defense of no coverage in its answer. The opinion merely states, id. at 467, that the insured served Aetna with a copy of the complaint and that Aetna filed a motion for summary judgment, id. at 468 (1), Aetna was not entitled to it because it did not show it had no potential liability, only that there was other insurance at the time. So it was entitled to only partial summary judgment, on that issue. The court confused the insurer's role as a defendant in the case. It was not made a defendant by plaintiff on the theory of contract liability, nor could it have been because no cause of action yet existed. It was made a defendant by its own voluntary action, to contest coverage, but it could not prove it would never be liable for any uninsured judgment.

The court in *Rabun* there considered the potential liability as merely "speculation," but it did suggest that the "actual occurrence of one of [the statutory] events" could make it liable. Id. at 470 (3). The problem with allowing summary judgment is that had one of those events subsequently occurred and the plaintiff sought to recover the tort judgment from his UM carrier in a contract action, he would be met with the summary judgment in the UM carrier's favor in the tort suit, based on a finding of no contract liability for the underlying tort. But otherwise the UM insurer would have been bound by the tort judgment in a later suit on the contract because it had been a party to that suit and chose not to contest that aspect of the case. Res judicata, as defined in *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 865-866 (1) (463 SE2d 5) (1995), or collateral estoppel, see *Blackburn v. Blackburn*, 168 Ga. App. 66, 72 (2) (308 SE2d 193) (1983), would apply. The grant of summary judgment to Aetna in *Rabun* was premature.

*Yarbrough v. Dickinson*, 183 Ga. App. 489 (359 SE2d 235) (1987) (physical precedent only), affirmed summary judgment to the UM carrier which had entered the suit as a defendant and sought summary judgment because there was then no uninsured motor vehicle as defined in OCGA § 33-7-11 (b). The trial court had granted it "but provided it was not to affect any future claim by Yarbrough for PIP benefits or other coverage under that policy." Id. In effect it was a limited summary judgment because it did not finally resolve the issue of coverage. In any later suit by its insured on the contract, demanding payment of an unsatisfied judgment which somewhere along the line had become one on an uninsured vehicle, the carrier would not be able to defend on the ground of res judicata or collateral estoppel because the summary judgment did not cover potential contract liability. In contrast, the summary judgment in *Rabun* was not limited.

For the reasons stated herein, I do not agree with the criticism of *Bohannon* and *Vaughn* in *Stout v. Cincinnati Ins. Co.*, 226 Ga. App. 220 (486 SE2d 195) (1997), cited in the majority opinion, or in the

case *Stout* cites, *Reid v. U. S. Fidelity &c. Co.*, 223 Ga. App. 204 (477 SE2d 369) (1996).

BLACKBURN, Judge, concurring in part and dissenting in part.

Because I believe the release agreement violated public policy to the extent that it provided that State Farm would not be bound by any judgment against Davis, I would affirm the trial court's grant of summary judgment to Terry and its denial of summary judgment to State Farm.

1. "The following general principles apply to an interpretation of [the uninsured motorist] statute: The purpose of uninsured motorist legislation is to require some provision for first-party insurance coverage 'to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers.' Uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose." (Citation omitted.) *Smith v. Commercial Union Assurance Co.*, 246 Ga. 50, 51 (268 SE2d 632) (1980). We have held that "any policy provision which attempts to contravene the clear intent of the Uninsured Motorists' Act is void and not enforceable." *State Farm Mut. Auto. Ins. Co. v. Harper*, 125 Ga. App. 696, 698 (188 SE2d 813) (1972).

The uninsured motorist statute evinces a clear public policy that an insured need only obtain a judgment against an uninsured motorist to trigger liability on the part of the uninsured motorist carrier. Indeed, OCGA § 33-7-11 (g) expressly provides that "[nothing] may . . . be required of the insured, subject to the other provisions of the policy or contract, except the establishment of legal liability." "The phrase 'legal liability' in the statute means exactly what transpired here, viz., the securing of a judgment against the uninsured motorist." *Continental Ins. Co. v. Echols*, 145 Ga. App. 112, 113 (243 SE2d 88) (1978). To the extent that the dismissal agreement provides that the judgment against Davis is not binding upon State Farm, and purports to require Terry to relitigate the issue of Davis' liability, it directly contradicts the statute's proscription against requiring anything other than the securing of a judgment against the tortfeasor. Accordingly, the agreement violates clearly expressed public policy and cannot be enforced.

This policy of requiring the tortfeasor's legal liability to be established in a single action is also reflected in other parts of the statute. Under OCGA § 33-7-11 (d), the plaintiff must serve his uninsured motorist carrier with a copy of the complaint and all pleadings as if it were a defendant in the action, in order to protect any uninsured motorist claim which he then has or may have in the future. The carrier has an absolute right to participate in the proceeding, either in

its own name or in the name of the uninsured motorist. Id. Although a carrier may elect not to participate in the proceeding, it does so with the statutory knowledge that adjudications as to the tortfeasor's liability will be binding upon the carrier in a subsequent action for uninsured motorist benefits. *Echols*, supra. When these facts are considered in conjunction with the statute's prohibition against requiring anything "except the establishment of legal liability," OCGA § 33-7-11, it is clear that the agreement in this case is violative of public policy to the extent that it negates the effect of the judgment against Davis for uninsured motorist insurance purposes.

The approach taken by the majority — allowing Terry to recover from State Farm if he can show at a second trial that Davis was liable for the accident — is not satisfactory. "A *judgment* obtained against the uninsured motorist is a condition precedent to recovery against an automobile liability carrier under the provisions of uninsured motorist coverage." (Emphasis supplied.) *Echols*, supra at 113. If the majority is correct that the dismissal agreement is an enforceable contract, then the judgment obtained against Davis in the underlying tort action is not binding upon and does not create any exposure for State Farm. Thus, such judgment cannot constitute the necessary condition precedent to State Farm's liability. The majority attempts to solve this problem by mandating a second trial, between Terry and State Farm (but not Davis), at which Terry must convince a jury that the original decision was correct. However, this second trial cannot result in a judgment against the tortfeasor, who would not be a party thereto. Thus, we would be left with a situation in which the original judgment against Davis cannot be used to create any liability for State Farm, and the second adjudication cannot satisfy the condition precedent to State Farm's liability under the uninsured motorist coverage (i.e., a judgment against the tortfeasor).

For the above reasons, I must respectfully dissent as to the reversal of the grant of summary judgment to Terry. Because Terry was entitled to summary judgment, I concur specially with the majority's conclusion that the trial court properly denied summary judgment to State Farm.

ANDREWS, Chief Judge, dissenting.

I concur fully in the majority's opinion in Divisions 1 through 4. I also concur in the reversal of the trial court's grant of summary judgment to Terry.

However, I dissent in part because I believe the opinion's analysis requires us to reverse the denial of summary judgment to State Farm. The trial court denied summary judgment to State Farm because it found the language in the dismissal was contrary to the statutory provisions of OCGA § 33-7-11. On appeal, State Farm

claimed the trial court erred in finding the dismissal was in conflict with the Uninsured Motorist Act and in finding that Terry was not bound by the agreement in the dismissal. The majority agrees with State Farm on both points. However, in spite of this holding, the opinion then affirms the denial of summary judgment to State Farm.

In Division 5, the opinion holds that Terry did not have to reserve State Farm and then concludes that because of this, State Farm should be denied summary judgment. This is immaterial. I agree Terry properly served State Farm pursuant to OCGA § 33-7-11 (d) in the first lawsuit and also properly served State Farm in the instant case. However, State Farm's contentions, as discussed above, were that the trial court erred in finding the dismissal contrary to the intent of the Uninsured Motorist Act and in not enforcing State Farm's right, under the dismissal, to be allowed to defend on the issues of liability and damages. As the opinion agrees with both these contentions, State Farm is entitled to summary judgment.

How Terry chooses to further pursue his rights under the dismissal agreement is not a matter upon which this Court should speculate. Moreover, *Rabun v. Williams*, 168 Ga. App. 467 (309 SE2d 624) (1983), is simply not before this Court. Accordingly, I do not concur in Divisions 6 and 7 as they are wholly advisory.

I am authorized to state that Presiding Judge Birdsong joins in this dissent.

DECIDED DECEMBER 4, 1997 —
RECONSIDERATION DENIED DECEMBER 18, 1997

*Harper, Waldon & Craig, Russell D. Waldon, Jonathan M. Adelman*, for appellant.
*Robert S. Windholz*, for appellee.