STATE OF NORTH CAROLINA v. EUNICE LYNN MARTIN

No. 7010SC71

(Filed 1 April 1970)

1. Criminal Law § 1;  Fish and Fisheries— validity of regulation — unlawful to "snag" fish

A regulation of the Wildlife Resources Commission making it unlawful "to snag fish," with no definition of the term "snag," is void for vagueness and uncertainty.

2. Criminal Law § 1;  Statutes § 10— definition of crime — certainty of statutory words

Few words possess the precision of mathematical symbols, and no more than a reasonable degree of certainty in a statute or regulation making an act a criminal offense can be demanded.

3. Statutes §§ 5, 10— statutory construction — use of dictionaries

Courts may, and often do, resort to dictionaries for assistance in determining the common and ordinary meaning of words and phrases.

4. Statutes § 10— strict construction of criminal statutes

Criminal provisions must be strictly construed against the State and liberally construed in favor of a defendant, with all conflicts resolved in favor of the defendant.

APPEAL by the State from *Godwin, S.J.,* 13 October 1969 Session of WAKE County Superior Court.

Defendant was brought to trial in the District Court of Wake County on a warrant charging that:

". . . on or about the 4th day of April, 1968, the defendant named above did unlawfully, wilfully, and [sic] take in public waters of North Carolina migratory fish to wit: Gizzard shad by unlawful method, to wit: did snag fish contrary to General Statutes of North Carolina 113-292 and 1968 North Carolina Fishing Regulations 1-68-J."

Defendant's motion to quash the warrant was denied and upon trial he was convicted and ordered to pay a fine of $25 plus costs of court. He appealed to Superior Court where he again moved to quash the warrant. The motion to quash was allowed and the State appealed pursuant to G.S. 15-179(3).

*Robert Morgan, Attorney General, by Millard R. Rich, Jr., Assistant Attorney General, and James L. Blackburn, Staff Attorney, for the State.*

*No appearance for defendant appellee.*

GRAHAM, J.

G.S. 113-292 provides in part as follows:

"(a)  The Commission [State Wildlife Resources Commission] is authorized to authorize, license, regulate, prohibit, prescribe, or restrict all fishing in inland fishing waters, and the taking of inland game fish in coastal fishing waters, with respect to:

(1).  Time, place, character, or dimensions of any methods or equipment that may be employed in taking fish; . . ."

[1]  Regulation 1-68, subsection J, adopted by the Commission pursuant to the authority vested in it under the provisions of G.S. 113-292 provides: "It shall be unlawful to snag fish." No definition of the term "snag" as used in the regulation is set forth. The question is therefore whether the term "snag," without further legislative definition, and as used in the regulation, is sufficiently definite to give notice to a citizen of ordinary understanding as to what is prohibited, to enable the court to apply the provisions of the regulation, and to enable a defendant to formulate his defense. 2 Strong, N.C. Index 2d, Criminal Law, § 1.

The State concedes that the term "snag" has no legal or technical meaning. However, it is argued that the word as used in the regulation has a common and ordinary meaning as evidenced by the fact that one of the definitions of "snag" set forth in *Webster's Third New International Dictionary* (1968) is ". . . to hook (a fish) in the body rather than in the mouth f: to hook (a fish) with a snagline. . ."

[1-3]  We are aware that few words possess the precision of mathematical symbols and that no more than a reasonable degree of certainty in a statute or regulation making an act a criminal offense can be demanded. *Boyce Motor Lines v. U. S.*, 342 U.S. 337, 96 L. Ed. 367, 72 S. Ct. 329; *State v. Hales*, 256 N.C. 27, 122 S.E. 2d 768. Also, courts may, and often do, resort to dictionaries for assistance in determining the common and ordinary meaning of words and phrases. 22 C.J.S., Criminal Law, § 24(2); *State v. Schriber*, 185 Or. 615, 205 P. 2d 149. We nevertheless agree with the trial court that the regulation as written is too vague and uncertain to withstand proper attack.

A literal application of the dictionary definition cited by the State would make it an unlawful act if a person, fishing with a baited hook in a lawful manner, had the good fortune of hooking a fish in the tail fin, rather than in the mouth, as he raised his hook

from the water. (We have heard stranger "fish tales"). On the other hand, the regulation would not apply to a person who used a snag-line for the purpose of taking or attempting to take fish unless it could be shown that he actually "snagged" a fish, because nowhere in the regulations is it made unlawful to use a "snagline." (Compare regulations which prohibit under certain circumstances the use of trot lines, set-hooks, and other named and *described* special devices for the purpose of taking or *attempting* to take fish).

We further note that *Webster's Third New International Dictionary* (1968) gives as one definition of "snag" the following: ". . . to catch or obtain by quick, decisive, and often more or less irregular action. . ." Under this definition most fishermen would be guilty of "fish snagging" based on their own admission.

[4] The Commission has undoubtedly sought to prohibit by regulation and in the public interest a reprehensible method of taking or attempting to take fish. This they have the authority to do, but only if they use language which specifically defines and describes the act or equipment they seek to prohibit. Perhaps, as the State argues, fishermen generally understand the language of the regulation as written. But it is also necessary that judges understand it, for their duty is to apply the regulation. And all judges are not fishermen. Criminal provisions must be strictly construed against the State and liberally construed in favor of a defendant with all conflicts resolved in favor of the defendant. *State v. Pinyatello,* 272 N.C. 312, 158 S.E. 2d 596; *State v. Scoggin,* 236 N.C. 1, 72 S.E. 2d 97. In our opinion the warrant was properly quashed and the judgment of the trial court is affirmed.

Affirmed.

BROCK and BRITT, JJ., concur.