STATE OF NORTH CAROLINA v. JIMMY RAY WARREN

No. 8210SC248

(Filed 2 November 1982)

1. **Searches and Seizures § 15— standing to challenge lawfulness of search**

Defendant had the requisite expectation of privacy so as to challenge the search of a car which was owned by defendant's sister and which was parked in front of defendant's apartment when he was arrested.

2. **Searches and Seizures § 20— search of vehicle—sufficiency of warrant**

The search warrant which was used to search a vehicle was sufficient where (1) the affidavit upon which the warrant was based was not stated in conclusory terms but stated facts to allow the magistrate to make a finding of probable cause independent of the affiant's statements, (2) it was issued by a mutual and detached magistrate, and (3) the warrant described with reasonable certainty the place to be searched and the items to be seized.

3. **Searches and Seizures § 4— chemical tests performed on impounded car—after search warrant returned—results admissible**

Chemical tests performed on a car while it was impounded at a local garage after a search pursuant to a valid warrant, and after the search warrant had been returned, were admissible since (1) sufficient evidence to prove defendant's guilt beyond a reasonable doubt was obtained in the first valid search, and (2) cases have allowed "second looks" at items which have already been seen and they are not considered another search subject to Fourth Amendment proscriptions.

4. **Crime Against Nature § 4— crime against nature as lesser included offense of second-degree sexual offense—indictment as supporting lesser offense**

An indictment which stated that defendant "feloniously commit[ted] a sexual offense . . . by forcing the victim to perform fellatio, in violation of G.S. 14-27.4," supported submission of crime against nature as a lesser included offense of second-degree sexual offense to the jury since definitions of fellatio could be read as requiring some penetration into the mouth or, at least, stimulation orally or by the mouth area.

APPEAL by defendant from *Smith, Judge.* Judgment entered 27 May 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 24 September 1982.

Defendant was indicted by the grand jury for murdering and committing a sexual offense on Byron Clarke on Saturday, 29 November 1980. He pled not guilty.

The State presented thirteen witnesses. Roy Lee Bost testified that he, the defendant, and the defendant's brother

Charles had been drinking on the day in question. They were riding through Raleigh in the defendant's car with Charles driving when they stopped and defendant persuaded Clarke to get in the car. When Clarke got in the car, defendant began rubbing his breast.

They then went to the dead end of Raleigh Beach Road where Clarke gave "samples" of sex to the defendant and Charles. With his gun drawn, defendant ordered Clarke out of the car. After Clarke tried to get a pair of scissors out of his pocketbook, defendant made him get on his knees.

Clarke then performed oral sex on Charles, at the same time begging not to be shot. Bost heard the defendant tell Clarke that he knew too much. The defendant was clicking the gun at Clarke's head while he was on his knees. After the gun discharged, Clarke fell over and defendant began kicking him and hitting him with the gun.

After leaving the scene of the crime, the men went to Bost's house. Defendant asked Bost's wife for a trash bag and then went outside for a brief time. Defendant later threw the bag in a trash can at Watkins Grill.

On cross-examination, Bost admitted that he dozed off during these events, and that he was in the front seat while the events were taking place at the rear of the car. Bost told the police about the crime on Sunday night following the Saturday on which it was committed.

Pathologist Dewey Pate, who did an autopsy on Clarke's body, testified that the cause of death was a gunshot wound, with contributing factors being additional injuries to the head and neck.

Two detectives of the Wake County Sheriff's Department testified that the defendant gave a statement in which he said that he did not mean to shoot Clarke, but that he had been clicking the gun at him without knowledge that it was loaded.

A pair of tan fishnet shoes was seized from the defendant's apartment during a search on 1 December 1980. Forensic serologist William Weis testified that there were bloodstains on the right shoe but that he could not determine the blood group.

Bost had earlier testified that the defendant was wearing light fishnet shoes at the time of the crime and that they had blood all over them.

Weis further stated that semen samples on a coat found near Clarke's body could have originated with the defendant and his brother Charles. But his tests also revealed no sperm present in Clarke's saliva. Tests in the defendant's car on 15 December 1980 showed the presence of human blood.

Steven Carpenter, a State Bureau of Investigation firearms and tool mark identification expert, testified that the bullet taken from Clarke's body was a .38 caliber lead, non-jacketed bullet. It was so badly deformed that it could not be used for comparison to determine the weapon from which it had been fired. Two bullets taken from defendant's car were the same type, but the spent cartridge found in the cylinder of the gun did not match the two cartridges seized from defendant's car.

The defendant was the primary witness of seven witnesses for the defense. He testified that when the men were driving through Raleigh that Bost told him to stop at the corner where Clarke was standing. Defendant observed that Clarke was a "faggot" but Bost disagreed. Clarke got in the car, defendant drove to Raleigh Beach Road and stopped the car.

Defendant got out of the car. He looked in the back seat a few minutes later and saw Clarke performing oral sex on Charles, who was asleep. Defendant pulled Clarke out of the car and a struggle ensued. He reached in the car and grabbed a gun, which he claims was not his and that he only had noticed after he got in the car. Defendant hit Clarke in the face or head with the gun and then stomped on his back. Defendant stated that the gun discharged only when he was struggling with Clarke. He admitted pointing the gun at Clarke's head while Clarke begged him not to shoot, but said that the gun was empty and that he clicked the gun once at his own head.

The defendant denied throwing anything in a trash can at Watkins Grill, or that he had sex with Clarke or made Clarke have sex with Charles. Other witnesses for the defendant corroborated his version of the facts.

The jury found defendant guilty of second degree murder and crime against nature. He was sentenced to a minimum of seventy-five years and a maximum of life for the second degree murder and to a minimum and maximum of ten years on the crime against nature conviction. From the verdicts and the sentences imposed, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Robert L. Hillman, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Marc D. Towler, for the defendant.*

ARNOLD, Judge.

Defendant first attacks the trial court's refusal to suppress the results of a visual search and chemical tests performed on bloodstains in his car. He argues that the search warrant was deficient because it did not specify items that were seized and was not based on probable cause. It is also averred that the second search of the car a few days later was not justified by the warrant because it had already been returned to the magistrate.

[1] Before examining the sufficiency of the warrant in this case, we first determine that defendant had standing to object to the search of the car. To have such standing defendant must have a legitimate expectation of privacy in the thing to be searched. *Rakas v. Illinois*, 439 U.S. 128 (1978), *reh. denied*, 439 U.S. 1122 (1979). The burden of proof of showing this expectation is on the defendant. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

The record shows that the car involved in this crime was owned by the defendant's sister. The car was parked in front of the defendant's apartment when he was arrested on 1 December 1980. Because of these facts, we find that defendant did have the requisite expectation of privacy so as to challenge the search of the car.

*Rakas* is distinguishable on the facts because the defendants there were only passengers in a car driven by the owner. There is evidence here that the defendant was driving the car that was searched. The fact that the car belonged to his sister strengthens his expectation of privacy. It is also important that defendant possessed the car before, during and after the crime, since posses-

sion is one factor to be considered in the expectation decision. *See State v. Jones,* 299 N.C. 298, 306, 261 S.E. 2d 860, 865 (1979). The possession was "legitimate" here, unlike that in *State v. Crews,* 296 N.C. 607, 252 S.E. 2d 745 (1979), where the court found no reasonable expectation of privacy because the vehicle was stolen.

[2]   We disagree, however, with defendant that the search warrant was illegal here. As the Supreme Court noted in *Cardwell v. Lewis,* 417 U.S. 583 (1974), "Generally, less stringent warrant requirements have been applied to vehicles." 417 U.S. at 589-90. *Cardwell* went on to state that:

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where its occupants and its contents are in plain view.

417 U.S. at 590.

An affidavit upon which a search warrant is based must not be stated in conclusory terms but should state facts to allow the magistrate to make a finding of probable cause independent of the affiant's statements. *U.S. v. Ventresca,* 380 U.S. 102 (1965). "[W]hen these [underlying] circumstances are detailed, where reasons for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner." 380 U.S. at 109. Deputy Sheriff Dodd's application for a search warrant here meets the *Ventresca* test because it gives sufficient facts to allow the magistrate to draw his own conclusions. It also meets the factors stated in G.S. 15A-244 for a valid application for a search warrant.

A second requirement for a valid search warrant is that it must be issued by a neutral and detached magistrate. *See Coolidge v. New Hampshire,* 403 U.S. 443 (1971). The magistrate who issued this warrant meets this standard and properly acted within his county of appointment as required by G.S. 7A-273(4).

Finally, the warrant must describe with reasonable certainty the place to be searched and the items to be seized. *See Stanford*

*v. Texas*, 379 U.S. 476 (1965); G.S. 15A-246(4). According to *Stanford*, the evil sought to be avoided by the Fourth Amendment is the "general warrant." 379 U.S. at 480. General warrants are also prohibited by N.C. Const. art. I, § 20, which describes them as "dangerous to liberty."

We find that the warrant in this case is sufficient in its description of the car to be searched, and the property to be seized, since it refers specifically to the application for search warrant on the reverse side of the search warrant that contains this information. The application was sufficient because it supplied "reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense will reveal the presence upon the described premises of the objects sought and that they will aid in the apprehension or conviction of the offender." *Jones*, 299 N.C. at 303, 261 S.E. 2d at 864, quoting *State v. Riddick*, 291 N.C. 399, 230 S.E. 2d 506 (1976), *reh. denied* 293 N.C. 261, 247 S.E. 2d 234 (1977).

[3] Having found that the first search of the car on 1 December 1980 was proper, we also determine that the chemical tests performed on the car while it was impounded at a local garage after the first search and, after the search warrant had been returned, were admissible. While it is true that the second search occurred after the effectiveness of the warrant had expired, we find no error on this point. Sufficient evidence to prove defendant's guilt beyond a reasonable doubt was obtained in the first valid search. Even though these facts do not fit one of the exceptions to the search warrant requirement, "the error was harmless beyond a reasonable doubt," as the Supreme Court observed in *Chambers v. Maroney*, 399 U.S. 42, 53 (1970), the case that the defendant cites as authoritative on this point.

We also find *State v. Nelson*, 298 N.C. 573, 260 S.E. 2d 629 (1979), *cert. denied* 446 U.S. 929 (1980), to be persuasive here. *Nelson* allowed a second look by the authorities at evidence seized from the defendant three days after the original valid search. According to the court, "The cases generally hold that these kinds of 'second looks' at items already once seen are not another search subject to Fourth Amendment proscriptions." 298 N.C. at 583, 260 S.E. 2d at 638.

**[4]** Defendant's second major assignment of error is that the trial judge should not have submitted crime against nature as a lesser included offense of second-degree sexual offense to the jury, because the indictment did not support the lesser offense. The indictment stated that the defendant

> unlawfully and wilfully did feloniously commit a sexual offense with Byron Montizel Clarke by force and against the victim's will by forcing the victim to perform fellatio, in violation of G.S. 14-27.4.

The defendant relies on *State v. Ludlum*, 303 N.C. 666, 281 S.E. 2d 159 (1981), which concluded that penetration was a necessary element of crime against nature under G.S. 14-177. But *Ludlum* specifically did not hold that penetration was a necessary element of fellatio or cunnilingus, which are "sexual act[s]" under G.S. 14-27.1(4), and the latter of which the defendant in that case was charged in violation of G.S. 14-27.4.

Since a crime is a lesser included offense of another crime only if the greater crime contains all the elements of the lesser crime, *State v. Davis*, 302 N.C. 370, 275 S.E. 2d 491 (1980), defendant concludes that crime against nature is not a lesser included offense of second degree sexual offense. He argues that since *Ludlum* did not require penetration for first degree sexual offense, it is not required for second degree sexual offense and thus the greater offense does not contain a necessary element of the lesser offense.

In deciding if penetration is a necessary element of fellatio under G.S. 14-27.1(4), which defines sexual act, we consider legislature intent as in *Ludlum*. But *Ludlum* only decided that penetration is not a necessary element of cunnilingus as that term is defined in G.S. 14-27.1(4). Fellatio is the alleged act here.

The reasoning process used in *Ludlum* to ascertain legislative intent is persuasive. First, we look at the ordinary meaning of the word fellatio. It is proper for a court to look to dictionaries for a definition. *Ludlum*, 303 N.C. at 671, 281 S.E. 2d at 162; *State v. Lee*, 277 N.C. 242, 176 S.E. 2d 772 (1970); *State v. Martin*, 7 N.C. App. 532, 173 S.E. 2d 47 (1970).

Fellatio is defined by *Webster's New Collegiate Dictionary* (8th ed. 1974) (hereinafter *Webster's*) as "oral stimulation of the

penis." *Dorland's Illustrated Medical Dictionary* (26th ed. 1981) defines the term as "oral stimulation or manipulation of the penis." *Webster's* defines oral as "of, given through, or affecting the mouth."

Thus, these definitions could be read as requiring some penetration into the mouth or at least, stimulation orally or by the mouth area. As a result, we find that crime against nature was properly submitted here as a lesser included offense of second degree sexual offense.

In reaching this holding, we are aware that fellatio could occur in remote cases without a technical penetration but we will not speculate on the anatomical variations of the prohibited act. It is inconceivable that the General Assembly meant for us to engage in such a pointless exercise. We will not "saddle the criminal law with hypertechnical distinctions and the prosecution with overly complex and in some cases impossible burdens of proof." *Ludlum*, 303 N.C. at 672, 281 S.E. 2d at 162. As that opinion concluded, "Once the victim of one of these acts has been forced against his or her will to submit, the degradation to his or her person, the real evil against which the statutes speak, has been accomplished." 303 N.C. at 673, 281 S.E. 2d at 163.

We have carefully considered defendant's other five assignments of error and find that they were correctly decided by the trial court.

No error.

Judges MARTIN and WHICHARD concur.