SAWYERS v. FARM BUREAU INS. OF N.C., INC.

[170 N.C. App. 17 (2005)]

MICHELLE L. SAWYERS, F/K/A MICHELLE L. TURNER, PLAINTIFF v. FARM BUREAU
INSURANCE OF N.C., INC., DEFENDANT

No. COA04-758

(Filed 3 May 2005)

**1. Insurance— Florida uninsured motorist claim—insurer
served in North Carolina—voluntary dismissal**

Summary judgment should not have been granted for defend-
ant-insurer on an uninsured motorist claim where the accident
occurred in Florida, defendant was served in North Carolina in
the resulting Florida action, and defendant was voluntarily dis-
missed from the Florida action. N.C.G.S. § 20-279.21(b)(3) is clear
and unambiguous: upon being served, the insurer shall be a party
to the action. It is not clear that the voluntary dismissal in Florida
was effectual; viewing the evidence in the light most favorable to
the non-moving party and interpreting the statute to provide the
fullest possible protection, in keeping with legislative intent,
Farm Bureau failed to demonstrate that there was no genuine
issue of material fact and that it was entitled to a judgment as a
matter of law.

**2. Civil Procedure— voluntary dismissal—subsequent claims**

A voluntary dismissal as to an insurance company in a
Florida automobile tort case did not bar North Carolina claims
for contract and unfair insurance practices. The actions were not
based on the same claim. N.C.G.S. § 1A-1, Rule 41(a).

Judge STEELMAN dissenting.

Appeal by Plaintiff from order entered 9 March 2004 by Judge
Robert C. Ervin in Superior Court, Mecklenburg County. Heard in the
Court of Appeals 1 February 2005.

*Ruff, Bond, Cobb, Wade & Bethune, L.L.P., by Robert S. Adden,
Jr., for plaintiff-appellant.*

*Caudle & Spears, P.A., by Harold C. Spears and C. Grainger
Pierce, Jr., for defendant-appellee.*

WYNN, Judge.

Section 20-279.21(b)(3) of the North Carolina Motor Vehicle
Safety and Financial Responsibility Act provides that an "insurer

shall be bound by a final judgment taken by the insured against an uninsured motorist if the insurer has been served with a copy of summons, complaint or other process . . . ." N.C. Gen. Stat. § 20-279.21(b)(3) (2003). Here, Plaintiff Michelle L. Sawyers contends that because she served Defendant Farm Bureau Insurance of N.C., Inc. with the summons and complaint of her Florida uninsured motorist action, Farm Bureau is bound by the Florida judgment. Because Section 20-279.21(b)(3) plainly states that an insurance company is bound if the insured effectuates service of process on an insurer in an uninsured motorist action, genuine issues of fact exist as to whether Farm Bureau is bound by the judgment in this action. Accordingly, we remand this matter for trial.

The record on appeal tends to show that in August 1996, Ms. Sawyers was a passenger in a vehicle owned and operated by Steven Sawyers, her then fiancé and later husband, when it was involved in an automobile accident in Florida. The driver of the other vehicle involved in the accident, Reginald T. Bembow, Jr., was an alleged uninsured motorist. Ms. Sawyers had uninsured motorist coverage with Progressive Southeastern and, through Steven Sawyers, with Farm Bureau.

On 28 May 1999, Ms. Sawyers filed suit in Brevard County, Florida, naming Bembow, Farm Bureau Mutual Insurance Company,[1] and Progressive Southeastern as defendants. A summons was issued to Farm Bureau on 28 May 1999. On 8 June 1999, L. Becky Powell, Special Deputy for Service of Process to the North Carolina Commissioner of Insurance accepted service of the summons and complaint, and sent the summons and complaint, along with a letter, to Farm Bureau on 9 June 1999. The summons and complaint were stamped "Received June 10, 1999 Farm Bureau Ins. Group."

On or around 23 June 1999, A. Craig Cameron, an attorney, made a Special Notice of Appearance and Motion to Dismiss for Farm Bureau. The basis of the motion to dismiss was that the Florida court "lacks jurisdiction over the person of the Defendant corporation . . . ." On 10 August 1999, a default was entered against Bembow and a copy of the default entry was sent to Mr. Cameron. On or around 20 September 1999, Ms. Sawyers and Farm Bureau executed a Joint Motion for Order of Dismissal. The text of the joint motion read:

1. Farm Bureau has raised defenses related to service and naming of parties. However, for the purposes of Farm Bureau's motion for summary judgment only, Farm Bureau stipulated to proper naming.

The Plaintiff, MICHELLE SAWYERS, and Defendant NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, by and through their undersigned attorneys, jointly move this Honorable Court for an Order dismissing this case without prejudice as to Defendant NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY only. This motion is brought pursuant to F.R.C.P. 1.420 and N.C. R. Civ. P. 41(a)(1), as the Plaintiff intends to re-file the action in a court of competent jurisdiction in North Carolina.

On 1 October 1999, the Florida trial court entered the order of dismissal without prejudice. The text of the order read:

THIS CAUSE came on before me upon the above Joint Motion of the parties for an Order dismissing this cause without prejudice as to Defendant NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY only. The Court having reviewed the file and being otherwise duly advised in the premise herein, it is hereby ORDERED AND ADJUDGED that: 1. This case, be and the same, is hereby dismissed without prejudice pursuant to F.R.C.P. 1.420 and N.C.R. Civ. P.41(a)(1), with each party to bear her own costs. 2. Defendant NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY will be removed from the case style for all prospective matters.

The record reflects that on 17 October 2000, Ms. Sawyers received a final judgment in the amount of $200,000.00, plus $188.00 in costs, against Bembow. On 1 November 2000, Ms. Sawyers' attorney notified Farm Bureau of the final judgment and requested payment of the policy limit of $25,000; Farm Bureau declined. On 11 April 2002, Ms. Sawyers instituted an action in North Carolina for breach of contract by failing to pay the $25,000 maximum toward the judgment against Bembow and for unfair and deceptive insurance practices. On 12 December 2002, Ms. Sawyers voluntarily dismissed the suit, which she then refiled on 23 June 2003. Farm Bureau filed an answer on 4 August 2003, and a motion for summary judgment on 23 December 2003. Ms. Sawyers filed a motion for summary judgment on 2 February 2004. The trial court granted Farm Bureau's motion for summary judgment, denied Ms. Sawyers' motion for summary judgment, and Ms. Sawyers appealed to this Court.

On appeal, Ms. Sawyers contends that the trial court erred in granting Farm Bureau's motion for summary judgment and denying

her motion for summary judgment. "Summary judgment is appropriate when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Hooks v. Eckman*, 159 N.C. App. 681, 684, 587 S.E.2d 352, 354 (2003) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001)). "The movant must clearly demonstrate the lack of any triable issue of fact and entitlement to judgment as a matter of law." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 220, 513 S.E.2d 320, 324 (1999). In reviewing a motion for summary judgment, we must view the evidence in the light most favorable to the non-moving party. *Id.*

[1] Ms. Sawyers first argues that the trial court erred in granting Farm Bureau's motion for summary judgment because Farm Bureau is bound by the Florida judgment against the uninsured motorist. We agree.

North Carolina General Statutes has a Motor Vehicle Safety and Financial Responsibility Act, the purpose of which "is to compensate the innocent victims of financially irresponsible motorists. It is a remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989) (internal citations omitted) (citing *American Tours, Inc. v. Liberty Mutual Ins. Co.*, 315 N.C. 341, 346, 338 S.E.2d 92, 96 (1986); *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 440, 238 S.E.2d 597, 604 (1977); *Moore v. Hartford Fire Ins. Co. Group*, 270 N.C. 532, 535, 155 S.E.2d 128, 130-31 (1967)). Section 20-279.21(b)(3) of the Act states that every North Carolina automobile insurance policy covering bodily injury:

> shall be subject to the following provisions which need not be contained therein.
>
> a. A provision that the insurer *shall be bound* by a final judgment taken by the insured against an uninsured motorist *if the insurer has been served with copy of summons, complaint or other process* in the action against the uninsured motorist by registered or certified mail, return receipt requested, or in any manner provided by law[.]

N.C. Gen. Stat. § 20-279.21(b)(3) (emphasis added); *see also Grimsley v. Nelson*, 342 N.C. 542, 548, 467 S.E.2d 92, 96 (1996)

("[A]ll insurance policies in the State will be deemed to include a provision that the insurer shall be bound by a final judgment taken by the insured against an uninsured motorist, providing the insurer is served with a copy of summons and complaint." (quotation and emphasis omitted)).

"Where the statutory language is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (quotation omitted); *see also, e.g., McNally v. Allstate Ins. Co.*, 142 N.C. App. 680, 682, 544 S.E.2d 807, 809 (2001) ("Where the language of a statute is unambiguous, the language of the statute controls.").

Here, North Carolina General Statute section 20-279.21(b)(3) is clear and unambiguous, and we therefore must give effect to the plain and definite meaning of its language. *Carolina Power & Light*, 358 N.C. at 518, 597 S.E.2d at 722. Dictionaries may be used to determine the plain meaning of language. *State v. Martin*, 7 N.C. App. 532, 533, 173 S.E.2d 47, 48 (1970). The plain meaning of the word "shall" is "imperative or mandatory." *Black's Law Dictionary* 1541 (4th ed. 1968) ("As used in statutes, contracts, or the like, this word is generally imperative or mandatory."); *see also, e.g., Gilbert's Pocket Size Law Dictionary* 307 (1997) ("Denoting obligation or mandatory action."). Moreover, this Court has previously stated that "[t]he word 'shall' is defined as 'must' or 'used in laws, regulations, or directives to express what is mandatory.' " *Internet E., Inc. v. Duro Communications, Inc.*, 146 N.C. App. 401, 405-06, 553 S.E.2d 84, 87 (2001) (quoting *Webster's Collegiate Dictionary* 1081 (9th ed. 1991)).

Under North Carolina General Statute section 20-279.21(b)(3), once an insured effectuates service of process on an insurance company in an uninsured motorist claim, it is "imperative or mandatory" that the insurer be bound to a final judgment taken by the insured against an uninsured motorist. Therefore, if Ms. Sawyers served Farm Bureau by registered or certified mail, return receipt requested, or another manner provided by law, with copy of the summons, complaint, or other process in her Florida action against Bembow, Farm Bureau is bound by the final judgment Ms. Sawyers took against Bembow.[2]

---

2. We note that, even under the terms of the insurance contract at issue here, Farm Bureau indicated its being bound by a judgment upon service of process: "Any judgment for damages arising out of a suit is not binding on us unless we have been

Even if we found the statute unclear, we would still reach the same result. "[W]here a statute is ambiguous, judicial construction must be used[.]" *McKinney v. Richitelli*, 357 N.C. 483, 487-88, 586 S.E.2d 258, 262 (2003) (citing *Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E.2d 797 (1948)). The primary rule of construction "is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Id.* (citation omitted). "Protection of innocent victims who may be injured by financially irresponsible motorists has repeatedly been held to be the fundamental purpose of [North Carolina's Motor Vehicle Safety and Financial Responsibility Act." *Hartford Underwriters Ins. Co. v. Becks*, 123 N.C. App. 489, 492, 473 S.E.2d 427, 429 (1996) (citing *Nationwide Mutual Ins. Co. v. Mabe*, 342 N.C. 482, 493, 467 S.E.2d 34, 41 (1996)). "This purpose is best served when the statute is interpreted to provide the innocent victim with the fullest possible protection." *Id.* (citation omitted); *Sutton*, 325 N.C. at 265, 382 S.E.2d at 763 (the FRA is a "remedial statute [which must be] liberally construed so that the beneficial purpose intended by its enactment may be accomplished.").

Interpreting section 20-279.21(b)(3) to provide Ms. Sawyers with the fullest possible protection from a financially irresponsible uninsured motorist, we hold that, if service of process on Farm Bureau was effectuated in the Florida action, Farm Bureau is bound by the judgment in that action.

The contention, proffered by Farm Bureau and seemingly endorsed by the dissent, that Ms. Sawyers needed to file suit against Farm Bureau in North Carolina seems untenable and inconsistent with the stated policy that the statute is remedial and should be interpreted to provide the victim of a financially irresponsible motorist with the fullest possible protection. In *Grimsley*, our Supreme Court held that where a trial court lacked personal jurisdiction over an uninsured motorist, claims against the uninsured motorist insurance carrier, whose liability is only derivative, failed. *Grimsley*, 342 N.C. at 547-48, 467 S.E.2d at 95-96 (citing, *inter alia, Brown v. Lumbermens Mut. Cas. Co.*, 285 N.C. 313, 319, 204 S.E.2d 829, 834 (1974) ("[p]laintiff's right to recover against his intestate's insurer under the uninsured motorist endorsement is derivative and conditional[]"); *Spivey v. Lowery*, 116 N.C. App. 124, 126, 446 S.E.2d 835, 837 (holding that because plaintiff released the tort-feasor, plaintiff may

_____

served with a copy of the summons, complaint or other process against the uninsured motorist." The issue of whether service was properly effectuated in this case is not before us; we therefore do not address it.

not assert a claim against the UIM carrier because of the derivative nature of the UIM carrier's liability), *disc. review denied*, 338 N.C. 312, 452 S.E.2d 312 (1994); *Buchanan v. Buchanan*, 83 N.C. App. 428, 350 S.E.2d 175 (1986) (same), *disc. review denied*, 319 N.C. 224, 353 S.E.2d 406 (1987)).

Here, as surely in many interstate vehicular accident cases, the courts of this State would not have had personal jurisdiction over the uninsured motorist. This accident did not occur in North Carolina, and nothing in the record indicates that Bembow, the uninsured motorist, was present or domiciled in North Carolina, or engaged in substantial activity in North Carolina. N.C. Gen. Stat § 1-75.4 (2003). Because the courts of this State would have lacked personal jurisdiction over Bembow, Ms. Sawyers would not have been able to bring suit against Farm Bureau here. *Grimsley*, 342 N.C. at 547-48, 467 S.E.2d at 95-96. Therefore, the contention that Ms. Sawyers could not have sued Farm Bureau in Florida, together with the law of this State indicating that Ms. Sawyers also could not have sued Farm Bureau here, would leave Ms. Sawyers with no venue for seeking recovery from Farm Bureau.

Nonetheless, Farm Bureau argues that, because it was dismissed as a party from the Florida action, it cannot be bound by the Florida judgment. It is unclear to this Court that Farm Bureau was not a party to the Florida action. Farm Bureau correctly states that our Supreme Court has held that an uninsured motorist and an insurance company are separate and distinct parties to an action brought by an insured against an uninsured motorist. *Grimsley*, 342 N.C. at 546, 467 S.E.2d at 95 (insurance company "is a separate party to the action between the insured plaintiffs and defendant [], an uninsured motorist[]").[3] Nevertheless, North Carolina General Statute section 20-279.21(b)(3) states that "[t]he insurer, upon being served as herein provided, *shall* be a party to the action between the insured and the uninsured motorist . . . ." N.C. Gen. Stat. § 20-279.21(b)(3). The statute is clear and unambiguous, and we therefore must give effect to the plain and definite meaning of its language. *Carolina Power & Light*, 358 N.C. at 518, 597 S.E.2d at 722. As stated earlier, the plain meaning of the word "shall" is "imperative or mandatory." Because it was "mandatory" or

---

3. Both Ms. Sawyers and Farm Bureau cite *Reese v. Barbee*, 129 N.C. App. 823, 501 S.E.2d 698 (1998), for this proposition. However, the *Reese* decision was affirmed by an evenly divided Supreme Court, which expressly stated that, while the Court of Appeals' decision was left undisturbed, it "stands without precedential value." *Reese v. Barbee*, 350 N.C. 60, 510 S.E.2d 374 (1999).

"imperative," upon service of process, for Farm Bureau to be a party to the Florida action, it is unclear that the voluntary dismissal of Farm Bureau as a party to the action was effectual if Farm Bureau received service of process.

In support of its argument that it is not bound by the Florida judgment because of the dismissal, Farm Bureau cites to *State Farm Fire & Cas. Ins. Co. v. Terry*, 230 Ga. App. 12, 495 S.E.2d 66 (1997). Not only is this Georgia case in no way binding, it is also distinguishable in crucial ways. In *Terry*, as here, the insurance company was served in the insured's action against an uninsured motorist. Also as here, the insurance company received consent to be dismissed from the case, in *Terry* because it appeared as if the defendant motorist was indeed insured. However, in contrast to this case, and, as the *Terry* court emphasized "most importantly," the *Terry* dismissal, which was signed by the insured's counsel, expressly stated that "[s]tipulations and defaults by, or Judgments against, [the uninsured motorist] will not be binding upon or create exposure by [the insurance company.]" *Id.* at 14, 495 S.E.2d at 69-70 (emphasis omitted). The dismissal also explicitly stated that the insurance company would "have a full right to defend [against the insured's claims] on liability and damages . . . ." *Id.* The dismissal benefitted the insured by "(1) saving him the time and expense of litigating with [the insurance company] at a time when it was apparent his action did not involve an uninsured motorist and (2) affording him the ability to re-serve State Farm at a later date without fear that the statute of limitation had expired." *Id.* at 16, 495 S.E.2d at 70. After judgment against the motorist had been obtained and it became clear that the motorist's insurance coverage had "vanished," the insured sought satisfaction from the insurance company. The *Terry* court found that the insurance company was not bound by the prior judgment against the uninsured motorist. Nevertheless, the resolution in *Terry* was to reverse the trial court's grant of summary judgment for the insured but affirm the denial of the insurance company's motion for summary judgment. *Id.* at 19, 495 S.E.2d at 72. Thus even under the significantly more compelling facts in *Terry*, the court did not find that the insurance company was entitled to judgment as a matter of law.

Here, in contrast to *Terry*, it appeared from the beginning of the Florida action that Bembow was an uninsured motorist. When Farm Bureau argued that the Florida trial court lacked personal jurisdiction over it, Ms. Sawyers consented to a voluntary dismissal of Farm Bureau. Crucially, that dismissal did not state that Farm Bureau

would not be bound to any judgment against the uninsured motorist in the Florida suit, nor did it state that Farm Bureau reserved its right to defend on liability and damages at a later point. In further contrast to *Terry*, Ms. Sawyers did not reap the benefits of savings in a suit against a driver who appeared to be insured, nor was Ms. Sawyers afforded the ability to re-serve Farm Bureau at a later date without fear of a statute of limitations defense, which Farm Bureau has indeed raised.

In further support of its argument that it is not bound by the Florida judgment, Farm Bureau also cites to *Vaught v. Dairyland Ins. Co.*, 131 Idaho 357, 956 P.2d 674 (1998). This case, too, is in no way binding precedent and is also distinguishable. In *Vaught*, the insureds brought suit against an uninsured motorist in federal court. While providing little detail, the *Vaught* court made clear that, in contrast to this case, the insureds not only did not join the insurance company as a party to the suit, they requested that the insurance company not intervene, making a strategic decision not to include the insurance company in the federal suit. *Id.* at 361, 956 P.2d at 678. Moreover, the *Vaught* court did not emphasize an avowed public policy similar to North Carolina's Motor Vehicle Safety and Financial Responsibility Act, which is intended "to compensate the innocent victims of financially irresponsible motorists" and is to be "liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Sutton*, 325 N.C. at 265, 382 S.E.2d at 763 (citations omitted).

In sum, viewing the evidence in the light most favorable to the non-moving party, Farm Bureau has failed to demonstrate that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. We therefore reverse the trial court's granting Farm Bureau's motion for summary judgment.[4]

[2] Ms. Sawyers also contends that the trial court erred in denying her motion for summary judgment. An order denying summary judgment is generally interlocutory, does not affect a substantial right, and is not immediately appealable. *Nationwide Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 122 N.C. App. 449, 456, 470 S.E.2d 556, 560 (1996) (citing *Herndon v. Barrett*, 101 N.C. App. 636, 639, 400 S.E.2d

---

4. In its answer, Farm Bureau raised defenses that neither party addressed on appeal and that we therefore also do not address. *See* N.C. R. App. P. 28(a) ("The function of all briefs required or permitted by these rules is to define clearly the questions presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon.").

767, 769 (1991)). Because the denial of Ms. Sawyer's motion for summary judgment is interlocutory and does not affect a substantial right, we refrain from addressing this argument on its merits and dismiss this assignment of error.

However, we note that as part of its argument regarding Ms. Sawyers' motion for summary judgment, Farm Bureau asserted that because Ms. Sawyers had already voluntarily dismissed claims against Farm Bureau twice, the case *sub judice* is barred under North Carolina General Statute section 1A-1, Rule 41(a). While we otherwise refrain from engaging the denial of Ms. Sawyers' motion for summary judgment because it is interlocutory, we briefly address this argument, which applies with equal force to Farm Bureau's argument that it was entitled to summary judgment.

Under Rule 41(a), a voluntary dismissal "operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this or any other state or of the United States, an action based on or including the same claim." N.C. Gen. Stat. § 1A-1, Rule 41(a) (2003).

Here, Ms. Sawyers' first suit was based in tort and arose from the automobile accident with Bembow. The first and second North Carolina actions were/are based in contract and unfair insurance practices and arose from Farm Bureau's failure to satisfy the Florida final judgment against Bembow. Because the Florida and North Carolina actions are not based on the same claim, this action is not barred. *See, e.g., Richardson v. McCracken Enters.*, 126 N.C. App. 506, 509, 485 S.E.2d 844, 846-47 (1997), *aff'd*, 347 N.C. 660, 496 S.E.2d 380 (1998) (where the "asserted claims [are] based upon the same core of operative facts" and "all of the claims could have been asserted in the same cause of action," two previously dismissed actions were "based on or including the same claim" and the third action was barred under Rule 41(a)(1)); *Centura Bank v. Winters*, 159 N.C. App. 456, 459, 583 S.E.2d 723, 725 (2003) (same).

For the foregoing reasons, we reverse the trial court's grant of Farm Bureau's motion for summary judgment and dismiss as interlocutory the trial court's denial of Ms. Sawyers' motion for summary judgment.

Reversed in part, dismissed in part.

Judge HUDSON concurs.

Judge STEELMAN dissents.

STEELMAN, Judge, dissenting.

I respectfully dissent from the majority opinion.

## I. Statutory Background

The parties acknowledge that the provisions of N.C. Gen. Stat. § 20-279.21(b)(3) apply to this case. These provisions are mandatory and are a part of every policy of motor vehicle insurance containing uninsured motorist coverage issued in North Carolina. The portions of that statute relevant to this appeal are as follows:

> A provision that the insurer shall be bound by a final judgment taken by the insured against an uninsured motorist if the insurer has been served with copy of summons, complaint or other process in the action against the uninsured motorist by registered or certified mail, return receipt requested, or in any manner provided by law; provided however, that the determination of whether a motorist is uninsured may be decided only by an action against the insurer alone. The insurer, upon being served as herein provided, shall be a party to the action between the insured and the uninsured motorist though not named in the caption of the pleadings and may defend the suit in the name of the uninsured motorist or in its own name.

N.C. Gen. Stat. § 20-279.21(b)(3) (2004). The 1999 action filed in Brevard County, Florida, sued the alleged tortfeasor, Bembow, and also sued Farm Bureau directly based upon plaintiff's insurance contract with Farm Bureau, seeking to recover damages directly from Farm Bureau and seeking a determination that Bembow, the operator of the other vehicle, was uninsured. This action was in direct contravention of the provisions of N.C. Gen. Stat. § 20-279.21(b)(3), as set forth above.[5]

## II. Issues Presented

The majority opinion holds that based upon the first sentence of N.C. Gen. Stat. § 20-279.21(b)(3) Farm Bureau was bound by the judgment of the Circuit Court of Brevard County, Florida, and reverses the trial court's granting of summary judgment in favor of Farm

---

5. It also contravened the provisions of N.C. Gen. Stat. § 20-279.21(b)(3)a, which provide that "the determination of whether a motorist is uninsured may be decided only by action against the insurer alone."

Bureau. On the particular, undisputed, and peculiar facts of this case, I would affirm the trial court based upon four theories, each which was pled before the trial court and argued before this court: (1) Farm Bureau was not a party to the action at the time the judgment was entered; (2) the statute of limitations had expired before plaintiff instituted this action; (3) Farm Bureau is not bound by the doctrine of *res judicata*; and (4)equitable estoppel.

### III.  Farm Bureau was not a Party to the Florida Action

The majority opinion holds that for an insurer to be bound by a judgment in an action between its insured and an uninsured motorist, all that is required is that the insurer be served with a copy of the summons and complaint, and that it is not necessary for the insurer to be a party to the action.

In construing a statute, this Court is required to look at the entire statute, and construe it *in pari materia*, giving effect, if possible, to all provisions contained in the statute. *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 188, 594 S.E.2d 1, 20 (2004) (noting that "this Court does not read segments of a statute in isolation. Rather, we construe statutes *in pari materia* giving effect, if possible, to every provision."); *State v. Tew*, 326 N.C. 732, 739, 392 S.E.2d 603, 607 (1990) (holding that "[a]ll parts of the same statute dealing with the same subject are to be construed together as a whole . . . and [individual expressions] be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit." (internal citations omitted)). The second sentence of N.C. Gen. Stat. § 20-279.21(b)(3) makes it clear that the General Assembly intended that the insurer be a party to the action between its insured and the uninsured motorist and fully participate in the litigation. The uninsured motorist carrier "shall be a party to the action" and has the option of defending the action either in the name of the uninsured motorist or in its own name.

Upon being served with a copy of the summons and complaint in the Florida action, Farm Bureau moved to dismiss for lack of personal jurisdiction. Plaintiff and Farm Bureau then filed a joint motion seeking the dismissal of Farm Bureau from the Florida lawsuit, stating as the basis for the motion that "the plaintiff intends to re-file the action in a court of competent jurisdiction in North Carolina." The reference to North Carolina as a court of competent jurisdiction implicitly states that the Florida court lacked competent jurisdiction. If this were not so, there would have been no reason to use the words

"in a court of competent jurisdiction." The motion further stated that it was brought pursuant to Fla. R. Civ. Pro. 1.420 (1)(1) (2004) and N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) (2004). This motion, signed by plaintiff's Florida counsel, constitutes an acknowledgment by plaintiff that the courts of Florida lacked jurisdiction over Farm Bureau.[6]

Thus, while plaintiff served Farm Bureau with a copy of the summons and complaint in the Florida action as dictated by the statute, Farm Bureau was not a party to the action as required by N.C. Gen. Stat. § 279.21(b)(3) because the Circuit Court of Brevard County, Florida did not have jurisdiction over Farm Bureau. It is fundamental that any judgment rendered against a party over which a court has no jurisdiction is void. *Southern Athletic/Bike v. House of Sports, Inc.*, 53 N.C. App. 804, 805-6, 281 S.E.2d 698, 699 (1981). As the Circuit Court of Brevard County, Florida had no jurisdiction over Farm Bureau, Farm Bureau was not a party to the action and cannot be bound by that court's judgment.

The majority argues that affirming the trial court would result in plaintiff having "no venue for seeking recovery from Farm Bureau." I disagree with this conclusion. By consenting to the dismissal of Farm Bureau from the Florida action, plaintiff abandoned her rights to proceed in that forum. Clearly, at the time the Florida action was dismissed plaintiff had a viable cause of action against Farm Bureau in the North Carolina courts. However, despite plaintiff's representations that she would be filing an action in North Carolina, none was filed until after the expiration of the statute of limitations. Plaintiff's unfortunate position in this matter is due to her own actions.

### IV. Statute of Limitations

*Thomas v. Washington* holds that there is a three year statute of limitations for asserting a claim against an uninsured motorist carrier. 136 N.C. App. 750, 754, 525 S.E.2d 839, 842 (2000). This statute of limitations begins to run on the date of the accident. In this matter, the accident took place on 10 August 1996. The order dismissing Farm Bureau from the Florida action was entered on 1 October 1999. Had plaintiff instituted an action against Farm Bureau in North Carolina within one year from the date of dismissal of the Florida

---

6. Plaintiff explicitly acknowledged that the courts of Florida lacked jurisdiction over Farm Bureau in its correspondence with Farm Bureau's counsel dated 3 September 1999. Plaintiff's Florida counsel stated in that letter that "it appears that the Florida Court lacks jurisdiction over the person of the Defendant North Carolina Farm Bureau Mutual Insurance Company," and that plaintiff "intends to re-file in North Carolina."

action, it would have been timely filed. N.C. Gen. Stat. § 1A-1, Rule 41(a)(2). However, plaintiff first filed a complaint against Farm Bureau in North Carolina on 11 April 2002 and then voluntarily dismissed that complaint on 12 December 2002. The action before this Court was instituted 23 June 2003, over three and one-half years after the dismissal of Farm Bureau from the Florida action. Plaintiff's claims against Farm Bureau are barred by the applicable statute of limitations.

## V. Res Judicata

Under *res judicata*, also known as claim preclusion, "a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them." *Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986). It precludes relitigation of issues that were determined in the prior act as well as litigation of issues that should have been raised in support or defense of the claim raised in the prior action. *Id.* at 436, 349 S.E.2d at 561 (Billings, J., concurring). Under the companion doctrine of collateral estoppel, also referred to as issue preclusion, "parties and parties in privity with them—even in unrelated causes of action—are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination." *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973). For either doctrine to apply, the prior action must have been a final judgment on the merits in a court of competent jurisdiction. *McInnis*, 318 N.C. at 428, 349 S.E.2d at 556-57; *King*, 284 N.C. at 355, 200 S.E.2d at 804-5.

*Res judicata* and collateral estoppel can be used defensively or offensively. A defendant can raise the defense of *res judicata* to bar a plaintiff from litigating a claim that was or should have been raised in a prior action between the parties. Conversely, a plaintiff can offensively bind a defendant to a judgment obtained in a prior action. Traditionally, the courts in North Carolina limited the application of the doctrines by requiring "mutuality of estoppel," that is, both the parties involved must be bound by the prior judgment. *McInnis*, 318 N.C. at 429, 249 S.E.2d at 557. In *McInnis*, the North Carolina Supreme Court held that it would no longer require mutuality of estoppel where collateral estoppel is used defensively; that is, "as long as the party to be collaterally estopped had a full and fair opportunity to litigate the issue in the earlier action," there is no requirement of mutuality. *Id.* at 432-35, 249 S.E.2d at 559-60. However, the

mutuality requirement still applies when collateral estoppel is used offensively and for all applications of *res judicata*.[7]

In the present case, plaintiff seeks to employ the doctrine of *res judicata* offensively to bind Farm Bureau to the Florida judgment. Since the statute of limitations has expired—barring plaintiff from instituting a new action against Farm Bureau—plaintiff asserts that Farm Bureau is bound by the Florida judgment and that Farm Bureau is now barred from raising any issues that were actually litigated or could have been litigated in the Florida action. Under the common law, plaintiff would not be able to assert that *res judicata* applies because the requirements for its application have not been met: (1) Farm Bureau was not a party or in privity with a party to the action at the time the judgment was entered; and (2) the Florida court was not a court of competent jurisdiction because it did not have personal jurisdiction over Farm Bureau.

However, plaintiff attempts to bind Farm Bureau to the Florida judgment by arguing that N.C. Gen. Stat. § 20-279.21(b)(3) allows the application of offensive *res judicata* so long as Farm Bureau was provided with service of process, thereby superceding the common law requirements for the application of the doctrine. A more reasonable construction of the statute is that it is merely an extension of the common law doctrines of *res judicata* and collateral estoppel. It is evident that the statute requires Farm Bureau to be a party in order to be bound by a judgment, just as the common law would require. This statutory requirement is intended to reiterate the common law understanding of *res judicata* and the need for mutual estoppel. It does not supercede the common law and allow the mere providing of notice of the action to be sufficient to bind a person as a party. Since Farm Bureau was not a party at the time the judgment was entered, and the Florida court did not have jurisdiction over Farm Bureau, neither *res judicata* nor N.C. Gen. Stat. § 20-279.21(b)(3) can bind Farm Bureau to the Florida judgment.

### VI. Plaintiff is Estopped from Asserting that Farm Bureau is Bound by the Florida Judgment

The doctrine of equitable estoppel applies:

when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through

___

7. The Court in *McInnis*, in discussing the national trend to abandon the requirement of mutuality for defensive applications of collateral estoppel, notes that aban-

culpable negligence induces another to believe certain facts exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

*Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 17, 591 S.E.2d 870, 881 (2004) (internal citations omitted).

In the Florida lawsuit, plaintiff and Farm Bureau filed a joint motion for dismissal, acknowledging that the Circuit Court of Brevard County, Florida had no jurisdiction over Farm Bureau and requesting that Farm Bureau be dismissed as a party to that action. The motion for dismissal stated: "the plaintiff intends to re-file the action in a court of competent jurisdiction in North Carolina."

Based upon this representation, Farm Bureau rightfully assumed its involvement in the Florida lawsuit was completely over. However, plaintiff now seeks to bind Farm Bureau with the judgment from the Florida court after consenting to the dismissal of Farm Bureau as a party. I would hold that Farm Bureau reasonably relied upon the express representations of plaintiff that her claims against Farm Bureau would be litigated at a later date in North Carolina. Based upon this reasonable reliance, Farm Bureau took no further action in the Florida court. It would be unconscionable to allow plaintiff to make these representations to the Florida court and to Farm Bureau, and then assert in this case that Farm Bureau is bound by the Florida judgment. Based upon the particular facts of this case, I would hold that plaintiff is estopped from asserting that Farm Bureau is bound by the Florida judgment.

## VII. Conclusion

I would affirm the trial court's granting of summary judgment against plaintiff in favor of Farm Bureau. Because I would affirm this ruling, it is not necessary to address plaintiff's remaining assignments of error.

---

doning the requirement of mutuality for *res judicata* would accomplish little. "Because a plaintiff is generally regarded as having a separate cause of action against each obligor even when the subject matter of the claims is identical, the requirement of identity of cause of action would render *res judicata* unavailable to one not a party or privy in any case." 318 N.C. at 432, n.4, 349 S.E.2d at 559.